THE STATE v. WELLS.

1. **Constitutional Law**: PUNISHMENT OF CRIME: MUNICIPAL CORPORA-
   TIONS. Article 5 of the amendments to the Constitution of the United
   States, which provides that no person shall be held to answer for an in-
   famous crime except upon presentment of a grand jury, applies only to
   the exercise of federal power, and does not prohibit municipal corpora-
   tions from punishing offenses, as they may be authorized to do by the
   laws of the State.

2. ———: TITLE OF ORDINANCE: MORE THAN ONE SUBJECT. An ordinance
   entitled "An ordinance defining and prescribing punishment for certain
   offenses," is not vulnerable to the objection that it contains more than
   one subject, and that all the subjects are not set out in the title.

3. **Venue**: APPLICATION FOR CHANGE: COUNTER AFFIDAVITS. Where
   an application for change of venue has been made in a criminal case on
   the ground of local prejudice, counter affidavits are not to be disregarded
   because made by citizens of the town where the alleged nuisance, which
   constituted the crime, exists.

4. **Jury**: QUALIFICATIONS: CRIMINAL LAW. A juror is not disqualified to
   sit upon the trial of a person for violation of a city ordinance, because a
   resident of the city.

5. **Criminal Law**: KEEPING HOUSE OF ILL FAME. Evidence showing
   that a person occupied a house and used it as his own would justify a
   verdict that he kept the house; knowledge of its bad character and assent
   to its use as a house of lewdness would authorize a conviction therefor;
   and such knowledge and assent might be inferred from rumor, as well
   as the conduct of the inmates and the owner.

6. **Evidence**: FALSE TESTIMONY: DISCREDIT OF WITNESS. If the jury
   believe that a witness has knowingly and intentionally testified falsely
   to any material matters, all of his testimony may be disregarded.

*Appeal from Mahaska District Court.*

WEDNESDAY, OCTOBER 17.

AN information was filed before the mayor of the city of
Oskaloosa, charging defendant with keeping a house of ill
fame, contrary to an ordinance of the city. Upon a trial
defendant was convicted and, appealing to the District Court,
another trial and conviction followed. He now appeals to
this court. The facts of the case involved in the questions
decided appear in the opinion.

*Williams & McMillen,* for appellant.

*J. F. McJunkin, Attorney General,* for the State.

BECK, J.—I. Objections, in proper form and at proper times, were made in the court below to the jurisdiction of the

*1. CONSTITU-TIONAL. law: punishment of crime: municipal corporations.*

mayor, on the ground that he cannot, by ordinance of the city, be empowered to punish defendant for the crime charged in the information, namely, keeping a house of ill fame. Ordinance No. 6, section 7, provides "that no person shall, within the corporate limits of this city, keep any house of ill fame, bawdy house, or house of assignation." Section 26 prescribes the punishment for violation of this ordinance.

It is insisted that the ordinance is in conflict with Article 5 of the amendments of the Constitution of the United States, which provides that "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury." It is sufficient to say, upon this point, that this provision of the federal constitution is applicable alone to the exercise of power by the United States, and is not a restriction upon the legislative authority of the States. *Barron v. Mayor etc. of Baltimore,* 7 Pet., 243. It is not claimed by defendant that the city is not fully authorized by the laws of the State to pass the ordinance in question and provide punishment for its violation. The only objection to the exercise of authority by the city is based upon this constitutional provision.

II. Objection is raised to the ordinance of the city on the ground that it does not comply with Code, section 489, which

*2. ———: title of ordinance: more than one subject.*

provides that "no ordinance shall contain more than one subject, which shall be clearly expressed in its title." The title is "An ordinance defining and prescribing punishment for certain offenses." The subject, surely, is clearly expressed, and is a unity. Defendant's counsel insist that, as there are twenty-six offenses defined and punishment prescribed therefor, the ordinance has as many subjects. This is clearly a mistake. The subject of the

ordinance is *offenses* against the city. The one subject is composed of many parts.

III. It is next insisted that the ordinance introduced in evidence is not duly authenticated by the signatures of the presiding officer and clerk of the council, as required by Code, section 492. No such objection was urged in the court below, and the ordinance was introduced in evidence as found in the book of printed ordinances published by the authority of the city. The objection cannot be now made in this court. *State v. King*, 37 Iowa, 462.

IV. The defendant made an application for a change of venue on the ground of the prejudice of the people of the county. His application was supported by the affidavits of seven citizens; thirteen other citizens of Oskaloosa stated on oath that no prejudice existed against defendant. The application was refused. We discover nothing to induce the belief that the court abused its discretion in that ruling. Counsel think the counter affidavits ought to have been disregarded because the affiants, being citizens of Oskaloosa, were interested in the result of the case. These citizens being neighbors, or at least residents of the same town, were better informed as to the existence of prejudice than persons residing in another place. The interest which they may have had in the suit did not disqualify them to make the affidavit. It is to be presumed that the court, in considering the matter, made due allowance therefor.

*3. VENUE: application for change: counter affidavits.*

V. Certain jurors were challenged on the ground that they were citizens of Oskaloosa. We know of no reason upon which they should be held disqualified to sit in the case. All jurors must be citizens of the county wherein the criminal cause is tried. The interest which they have in the result of the case is quite as great, and not different from, that possessed by the jurors objected to in this instance. It cannot be claimed that they are disqualified. This being a criminal case is distinguishable from *Cramer v. The City of Burlington*, 42 Iowa, 315.

*4. JURY: qualifications: criminal law.*

VI. Certain instructions given to the jury are complained of by counsel. They are to the effect that evidence showing

the defendant was occupying the house, and using it as his own,
**5. CRIMINAL law: keeping house of ill-fame.** and exercising the control over it that men usually have over their own houses, would authorize the jury to find that he kept the house. And the defendant must have had knowledge of the character of the house, and assented to its use as a house of ill-fame, to authorize conviction. Such knowledge and assent the jury were authorized to find, from the publicity of the lewd conduct carried on in the house, the public reports of the ill-fame of the house and defendant's knowledge thereof, and his personal conduct and conversation with inmates and visitors of the house. We discover no objection to these instructions. The simple statement of their purport is their sufficient vindication.

VII. The eighth instruction given the jury is to the effect,
**6. EVIDENCE: false testimony: discredit of witness.** that if they believed a witness knowingly and intentionally testified falsly to any material matter, all of his testimony may be disregarded.

It is first urged that to justify the disregard of the witness' testimony, the jury must have something more than a belief that he swore intentionally false; they must be satisfied thereof beyond a reasonable doubt. No authorities are cited sustaining the rule contended for, and we can find no support for it in reason.

VIII. The defendant's counsel further argue that a witness testifying falsly in one particular, may in other matters, if corroborated, be believed. It is insisted the instruction would require his testimony to be wholly disregarded in such a case. But it has no such effect. The tesimony is left with the jury, to be weighed by the rules which common sense may discover. It is impossible for the court to announce all such rules. They would be applied by the jury without aid from the court. Being informed that they were at liberty to disregard the discredited testimony, they would not understand that, if corroborated, it is wholly valueless, and is not to be considered.

IV. An instruction asked by defendant, as modified by the court, was to the effect that the bad reputation of the house

prior to the time defendant occupied it should not be considered to fix upon defendant guilt. This is the explicit meaning of the instruction. The defendant introduced testimony to show that prior to his occupancy of the house it had the reputation of being a place of ill-fame. The evidence, he insists, tended to show his innocence, and the instruction, he claims, required the jury to disregard it. But the instruction required them to disregard the evidence when offered to establish defendant's guilt, not when introduced to support his defense.

X. The judgment requires the defendant to be imprisoned until the fine and costs are paid. It is insisted that he cannot be lawfully imprisoned for non-payment of costs. But the ordinance under which the conviction was had so provides; it is in harmony with Code, section 484.

XI. The record does not show that, when the defendant was sentenced by the court, he was informed of the nature of the charge against him, of his plea and of the verdict, and was asked whether legal cause existed to suspend judgment against him, as required by Code, section 4503. Neither does it appear that this provision was not complied with; we are, therefore, to presume that the requirements of the statute, if applicable to this case, were obeyed by the court.

XII. The bail of defendant upon the appeal was fixed at $500. The defendant insists that it is excessive, and asks us to mitigate it. We think the bail, in view of the probable amount of costs, is not excessive. Besides, we think after the purpose of the bail has been accomplished it is too late to object to the amount required.

We have noticed, with the particularity they demanded, all questions raised by counsel. We find no error in any of the proceedings of the court below.

AFFIRMED.