QUIN BOHANAN, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Murder:** VERDICT OF LOWER DEGREE ON SECOND TRIAL. Where on a trial for murder the defendant is found guilty of a lower degree of homicide than the highest degree charged in the indictment, and on his motion a new trial is granted, the effect of granting a new trial is to set aside the whole verdict and leave the case for retrial upon the same issues as upon the first trial.

2. **Jurors:** COMPETENCY. If upon examination of a juror it is shown that he has an opinion founded upon newspaper reports, and it shall satisfactorily appear that the character of such opinion is such that it will not interfere with his rendering an impartial verdict, it is not error to admit him to the jury.

3. **Attorney:** ARGUMENT OBJECTED TO, EXCEPTIONS MUST BE TAKEN. When it is alleged that an attorney, in the argument of a cause on trial to a jury, went outside of the record and appealed to the passions and prejudices of the jury, the attention of the court should be called to the language and conduct of the attorney by the proper objection and a ruling had thereon by the court. If the objection is overruled and an exception taken to the ruling, the question may be reviewed in the supreme court upon the decision of the trial court. Without such ruling and exception there is nothing for the reviewing court to consider.

ERROR to the district court for Otoe county, where the cause was taken on change of venue from Lancaster county. Tried below before POUND, J.

C. E. Magoon and O. P. Mason, for plaintiff in error, cited: Stuart v. Commonwealth, 28 Gratt., 950. People v. Gilmore, 4 Cal., 376. Barnett v. People, 54 Ill., 325. People v. Knapp, 26 Mich., 112. State v. Martin, 30 Wis., 216. Dawson v. State, 65 Ind., 422. Warnock v. State, 6 Tex. App., 450. State v. De Laney, 28 La. Ann., 484. Miller v. State, 58 Ga., 200. Guenther v. People, 24 N. Y., 100. Jones v. State, 13 Tex., 184. State v. Smith, 53 Mo., 139. Johnson v. State, 29 Ark., 31. Cooley Cons. Lim., § 328, and cases cited. 1 Bishop Crim. Law, § 676. 1 Wharton Crim. Law, § 550, and cases cited. State v. Lessing, 16 Minn., 75. State v. Belden, 33 Wis., 120. Brennan v. People, 15 Ill., 517.

William Leese, Attorney General, and J. B. Strode, District Attorney, for the State, cited: State v. Behimer, 20 Ohio State, 572. Jarvis v. State, 19 Id., 585. Leslie v. The State, 18 Id., 394. People v. Keefer, 3 Pac. Rep., 818. State v. McCord, 8 Kan., 232. State v. Tweedy, 11 Iowa, 350. Sanders v. The State, 85 Ind., 318. State v. Morris, 1 Blackf., 37. Commonwealth v. Arnold, 6 Crim. Law Mag., 61. Baldwin v. The State, 12 Neb., 64. Cooley Cons. Lim., 327.

REESE, J.

The plaintiff in error was indicted by the grand jury of the February term, 1882, of the district court of Lancaster county. There was but one count in the indictment. The crime charged was murder in the first degree. A trial was had at the following May term of court, which resulted in a conviction of murder in the second degree. Plaintiff in error then brought the cause into the supreme

court, where the judgment of the district court was reversed and a new trial ordered. See *Bohanan v. The State*, 15 Neb., 209. A change of venue was then taken by which the place of trial was removed from Lancaster to Otoe county. On the second trial the jury found him guilty of murder in the first degree. A motion for a new trial was made and overruled, and the court imposed upon him the penalty of death. He now prosecutes error in this court.

. Prior to the commencement of the last trial the plaintiff in error filed in the district court a plea of former acquittal of the charge of murder in the first degree. This plea contained a recital of the facts of the previous trial on the same indictment, and the conviction thereon of murder in the second degree and his sentence to the penitentiary for life. To this plea the state made answer, alleging that the plea ought not to be sustained for the reason that on defendant's own motion the verdict and judgment were set aside and a new trial granted. Plaintiff in error demurred to this answer. The demurrer was overruled. The plea was held bad and the first trial held not a bar to a prosecution for murder in the first degree, as charged in the indictment.

During the progress of the trial plaintiff in error requested the court to instruct the jury as follows:

"10. If the jury find from the evidence that at the May term, 1882, of the district court of Lancaster county, in the state of Nebraska, the defendant was tried upon the same indictment upon which he is now being prosecuted, and upon such trial was found guilty of murder in the second degree, and judgment was rendered against him upon such finding, then, as a matter of law, the jury in this case cannot find the defendant guilty of murder in the first degree."

The court refused to give this instruction, but instructed the jury as follows upon that question:

" 11.    You should not be influenced in the least by any thing that any other jury may have done."

To the refusal to give the first above quoted instruction, and to the giving of the second, plaintiff in error excepted.

By the foregoing it will be seen that the question here presented is, whether or not the verdict of the jury on the first trial, finding plaintiff in error guilty of murder in the second degree, is such an acquittal of the crime of murder in the first degree as would protect and shield plaintiff in error from the danger of a conviction of the higher crime on the second trial—the verdict and judgment having been set aside upon his own motion and request.    The question here presented is a new one in this state, and is one of great importance.    The question is not new in the sense of its never having decided in other states; but, unfortunately, the decisions of the courts of last resort in other states, upon the question here presented, have not been uniform.    The doctrine contended for by plaintiff in error has, to a greater or less extent, been declared by the supreme courts of Virginia, California, Tennessee, Illinois, Michigan, Iowa, Mississippi, Wisconsin, Indiana, Alabama, Texas, Missouri, and Arkansas.    It is not deemed necessary to notice the decisions of all those states, as some of them are simply *dicta*, and some are in cases dissimilar to the one at bar, but we will notice the reasoning in what we deem the leading cases upon the subject.

In *The People v. Gilmore*, 4 Cal., 376, the accused was indicted for murder.    Upon trial the jury rendered a verdict of guilty of manslaughter, which was set aside on the prisoner's motion, and a new trial ordered.    On the second arraignment he pleaded a former acquittal.    Chief Justice Murray, in writing the opinion of the court, which at that time (1854) consisted of himself and Mr. Justice Heydenfeldt, argues the question at some length and with ability, but to the mind of the writer his deductions are not conclusive.    From the opinion I quote as his first proposition

as follows : " A conviction for manslaughter is an acquittal of the charge of murder, and the verdict, though general in its terms, must, by legal operation, amount to an acquittal of every higher offense charged in the indictment than the particular one of which the prisoner is found guilty. The reason is obvious; if such were not the case the party after undergoing punishment for manslaughter might be arraigned and tried again for murder, notwithstanding he had been compelled to answer this charge upon the first trial, and the jury had passed upon the same." This is undoubtedly correct so long as the verdict of the jury is allowed to stand. It must be conceded that until the accused himself procures the cancelation of the verdict the judgment must be a complete protection against another prosecution for the same crime. So also would be a verdict of not guilty. But where the prisoner upon his own motion procures a verdict to be set aside, the rule should be otherwise. In support of his conclusion the learned writer cites *Hart v. The State*, 25 Miss., 378, and quotes as follows : "The jury in such a case, in contemplation of law, renders two verdicts. The one acquitting him of the higher crime, the other convicting him of the inferior." It is quite difficult for us to adopt this proposition. The verdict in such case must be an entirety. The prisoner stands charged with the unlawful killing of the deceased. He is either guilty or not guilty. If found guilty it is the next duty of the jury to ascertain the magnitude of this guilt. When that is done the verdict of guilty is returned with a finding as to the grade of that guilt. At the time this decision was made the criminal code of California contained the following section : " A new trial is a re-examination of the issue in the same court before another jury after verdict has been given. It places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict can not be used or referred to either in evidence or in argument."

This section was not deemed sufficient to justify the court in putting the prisoner upon his trial for murder, but the court combats the power of the legislature to enact such a law by the following:  "The constitution of this state has provided that 'no person shall be subject to be twice put in jeopardy for the same offense.' Now, if I am right, that a conviction for manslaughter is an acquittal for murder, it must follow that any law that would compel a party to be re-tried for murder in order to escape the minor offense, thereby putting the party in jeopardy, is in conflict with this provision of the constitution." Thus the learned judge in the discussion of the case goes beyond the rulings of any of the other courts.  The supreme courts of Kansas, Indiana, Kentucky, North Carolina, and others, have not hesitated to follow such laws and apply the principle to capital cases.  And in California, in a recent decision, the supreme court has, to the mind of the writer, fully overruled the holding in *The People v. Gilmore*.  In *The People v. Keefer*, reported in 3 Pacific Reporter, 818, it is held that "on a plea of former conviction under an indictment for murder, the fact that defendant was convicted of murder in the second degree will not be a bar to a conviction of murder in the first degree on a re-trial."  It is insisted that this decision was made under a provision of the statute enacted in 1874, which is as follows:  "The granting of a new trial places the parties in the same position as if no trial had been had.  All the testimony must be produced anew, and the former verdict cannot be used or referred to either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the indictment."  It will be observed that in essence this section does not vary materially from the one in force at the time of the decision in *The People v. Gilmore*.  It can do little more than to place the parties "in the same position as if no trial had been had," as provided in the first act.  But it is worthy of notice that a careful examination

of the opinion in *The People v. Keefer* fails to disclose any reference to the act of 1874. The decision, by an unanimous court, is based entirely upon another section of the criminal code, which was passed in 1856, which divided the crime of murder into two degrees, the first and second. The section, as amended April 19, 1856, is as follows:

"Malice shall be implied when no considerable provocation, or when all the circumstances of the killing show an abandoned and malignant heart. All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree; but if such person shall be convicted on confession in open court, the court shall proceed, by examination of witnesses, to determine the degree of the crime and give sentence accordingly. Every person convicted of murder of the first degree shall suffer death, and every person convicted of murder of the second degree shall suffer imprisonment in the state prison for a term not less than ten years and which may extend to life."

The court, in the opinion by Judge McKinstry, uses the following language: " The indictment charges the crime of *murder*, and the defendant was not acquitted of murder by the first verdict. In dividing the crime of murder into two degrees the legislature recognized the fact that some murders, comprehended within the same general definition, are of a less cruel and aggravated character than others, and deserving of less punishment. It did not attempt to define the crime of murder anew, but only to draw certain

lines of distinction by reference to which the jury might determine, in a particular case, whether the crime deserved the extreme penalty of the law or a less severe punishment. *People v. Haun*, 44 Cal., 98. *People v. Doyell*, 48 Cal., 94. After the act of 1856, which divided the crime into murder of the first and second degrees, *murder* remained and it still remains the unlawful killing of a human being with malice aforethought. Penal Code, 187, 188. The malice may be express or implied; the express intent to kill or to commit one of the named felonies may be affirmatively established, or, the killing being proved, the malice may be implied, but in either case the crime is murder. The fact that a severer penalty is to be imposed in one case than the other does not change the effect of a previous conviction, and the defendant who on his own motion secures a new trial subjects himself to a re-trial on the charge of murder, whether the first verdict was guilty of murder of the first or of the second degree. At the second trial he may, if the evidence justify such verdict, be found guilty of murder of the first degree."

It will be observed that the provisions of the amended act of 1856 are very similar to the provisions of sections three, four, and four hundred and eighty-nine of the criminal code of Nebraska, except that murder in the second degree is not specifically described. The sections above referred to are as follows:

SEC. 3. "If any person shall purposely, and of deliberate and premeditated malice, or in the perpetration, or attempt to perpetrate any rape, arson, robbery, or burglary, or by administering poison, or causing the same to be done, kill another; or, if any person, by willful and corrupt perjury, or by subornation of the same, shall purposely procure the conviction and execution of any innocent person; every person so offending shall be deemed guilty of murder in the first degree, and, upon conviction thereof, shall suffer death."

Sec. 4. " If any person shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree; and on conviction thereof shall be imprisoned in the penitentiary not less than ten years, or during life in the discretion of the court."

Sec. 489. " That in all trials for murder, the jury before whom such trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict whether it be murder in the first or second degree, or manslaughter; and if such person be convicted by confession, in open court, the court shall proceed by examination of witnesses, in open court, to determine the degree of the crime, and shall pronounce sentence accordingly."

By section 19 of the act of California, passed in 1850, and which, so far as we are able to ascertain, still remains upon the statute books of that state, murder is defined to be " the unlawful killing of a human being with malice aforethought, either express or implied. * * * "

In *Baldwin v. The State*, 12 Neb., 61, the then chief justice, MAXWELL, in delivering the opinion of the court, in referring to the indictment which charged, in separate counts, the crime of murder in the first degree, says: " There is but one offense charged in the indictment in this case, viz.: The unlawful killing of Allen J. Yokum." If, therefore, there is but one offense charged in the indictment in the case at bar—the unlawful killing of James Cook—it would seem that the adjudications of the state of California may well be said to sustain the action of the trial court in placing the plaintiff in error upon his trial for murder in the first degree.

In *People v. Hann*, 44 Cal., 96, the supreme court, by Judge Belcher, in speaking of the division of the crime of murder into two degrees, says: " In making the division the legislature recognized the fact that some murders comprehended within the general definition are

5

of a less cruel and aggravated 'character than others, and, therefore, deserving of less punishment. It also recognized the fact that some murders of the less' aggravated class are deserving of less punishment than others of the same class, and it accordingly provided that murders of the second degree should be punished by terms of imprisonment depending for their length upon the circumstances of each particular case. In all this, however, the legislature did not intend to say that murder of the second degree should be anything less or other than murder. It did not, indeed, attempt to define murder anew, but only to draw certain lines of distinction by which it might be told in a particular case whether the crime was of such a cruel and aggravated character as to deserve the extreme penalty of the law, or of a less aggravated character, deserving a less severe punishment." The same doctrine is held in *People v. Form*, 25 Cal., 361.

In *Brennan v. The People*, 15 Ill., 511, and in *Barnett v. The People*, 54 Ill., 325, the supreme court of that state have held that a defendant cannot upon a second trial be tried for a degree above that for which he was convicted upon the first. In *Barnett v. The People* the court simply follows *Brennen v. The People*, without argument or criticism. The decision in the latter case is based upon the cases of *Slaughter v. The State*, 6 Humph., 410; *Morris v. The State*, 8 S. & M., 762; and *Hurt v. The State*, 25 Miss., 378.

In *Slaughter v. The State* the plaintiff in error was indicted for murder in the first degree, and upon trial was found " not guilty of murder as charged in 'the bill of indictment, but they find him guilty of voluntary manslaughter in manner and form as charged in the indictment." On his motion a new trial was granted. At a subsequent term he filed a plea of former acquittal, setting out the proceedings and verdict of the jury. He contended that he was entitled to his discharge and that he could not

be tried for any crime under that indictment. The trial court held otherwise, and put him upon trial for manslaughter. Error was taken to the supreme court, and it was held that the trial court decided correctly. The question as to whether the plaintiff in error could have been convicted of a higher crime than manslaughter was in no sense before the court. Yet it is said that if he had been tried for murder, it would have been erroneous. It is quite probable that the *finding* of "not guilty of murder," by the verdict, would make no difference as to the power of the court to put the accused upon his trial on the whole indictment, yet the court refers to it as a verdict of acquittal.

*Morris v. The State*, 8 S. & M., 762, was a case where the defendant was put upon trial under an indictment containing four counts: 1st. With the forgery of a bank-note of the Bank of the State of North Carolina. 2d. With uttering and publishing as true a forged bank-note of the Bank of the State of North Carolina. 3d. With having in his possession certain forged bank-notes of the Bank of the State of North Carolina, with the intent to utter the same. The 4th was similar to the 3d. The verdict of the jury was guilty as charged in the second, third, and fourth counts. The verdict was objected to as imperfect, because there was no express finding upon the first count. The cause was taken to the supreme court (Mississippi) where the verdict was held good, but the cause was reversed for error occurring in the introduction of testimony. The judgment of reversal provided that the new trial should be confined to the second, third, and fourth counts, the plaintiff in error having been acquitted upon the first count. It will thus be seen that the question in the case at bar was not before that court for two reasons. First, the question did not arise in the case. Second, each count in the indictment was for a separate and distinct offense and not for different grades or degrees of the same offense.

The case of *Hurt v. The State* (25 Miss., 378) was one in which the plaintiff in error had been indicted for murder. He filed certain pleas in abatement, alleging the illegal organization of the grand jury which found the indictment. These pleas were overruled by the court and he was put upon trial, which resulted in a verdict of guilty of manslaughter in the third degree. His motion for a new trial being overruled, he alleged error in the supreme court, and a new trial was granted upon the ground that the plea in abatement should have been sustained. The judgment of the trial court was reversed, the court holding that its judgment of reversal should extend no further than to relieve him as against the verdict *against* him (manslaughter). As a new indictment would have to be found, and as a prosecution for the crime of manslaughter was barred by the statute of limitations, the prisoner was, upon his motion, discharged. The reasoning of the court in this case seems to be based upon the acknowledged and conceded fact that if a party charged with murder and convicted of manslaughter seeks no relief from the judgment of conviction, but allows it to stand unreversed and in full force, he cannot, after serving his term of imprisonment, be again prosecuted for murder. This is most certainly true. If the judgment stands unimpeached it is the final judgment in the case, and of course will stand as a protection to the party convicted. From this the court concludes that the other proposition must follow, viz.: That if the jury convicts of a lower grade of the same crime that conviction is necessarily an acquittal of the higher grade, and that acquittal must stand for all time, notwithstanding the verdict and judgment of conviction may be set aside. That the jury, in contemplation of law, renders two verdicts; one acquitting of the higher crime and the other convicting him of the lower, and that the verdict is not an entirety. Upon this theory we think that case, as well as *Brennen v. The People*, rests. And indeed the

same may be said of *The State v. Tweedy*, 11 Iowa, 350. *The State v. Martin*, 30 Wis., 216. *State v. Belden*, 33 Id., 120. *Jones v. State*, 13 Tex., 184. These latter cases are exhaustive and well written, and were it not that they all seem to be grounded upon what seems to us to be a false basis we could well follow them.

The case of *Johnson v. The State*, 29 Ark., 31, is a full digest of all the cases so holding, and, adopting the same reasoning, holds with them.

It is beyond the comprehension of the writer to say that the *character* of an act may be finally and forever decided upon and adjudicated, while the fact of the act itself· is left untouched. Thus a person is indicted for murder in the first degree under the laws of Nebraska. Upon trial he is found guilty of murder in second degree. So long as that verdict and the judgment stand unreversed there is an adjudication that the act or crime was committed, and also fixing the character or quality of the act. Now it is very clear and easily understood that this judgment and verdict will protect the accused from another prosecution. But suppose a new trial is granted. There is no adjudication that any person has been killed nor that any crime has been committed. But it is said there is an adjudication that *if* the deceased was killed by the prisoner, it was not done of deliberate and premeditated malice! It is contended that such a verdict is severable; that there are in contemplation of law two verdicts—one of guilty of murder in the second degree, which has been set aside, and one of not guilty of murder in the first degree, which, by virtue of the constitutional provisions in the federal and state constitutions, must stand. This theory is also built upon what is considered the difference between an adjudication and having been once in jeopardy. It is true that this distinction does exist to some extent, but yet if the first verdict is worth anything to a prisoner, it must be upon the theory that he has been *acquitted* in so

far as the criminal quality of the act of killing is con-cerned, but no further.

In *Hurley v. The State*, 6 Ohio, 400, it is decided that the simple verdict of a jury is not a sufficient acquittal to .entitle a defendant to its protection, but that to be of any force there must be a judgment on the verdict, citing 2 Hale's P. C., 243.

By the statutes of this state a new trial, after a verdict of conviction, may be granted, on the application of the de-fendant, for certain reasons which are set out in the act. See section 490 of the criminal code. A new trial is de-fined to be a re-examination of an issue of fact. Bouv. Law Dic. It is a re-trial of the facts of the case. In *Za-leskie v. Clark*, 45 Conn., 401, Judge Loomis, in writing the opinion of the court, says: "It is believed that it always has been used in the sense of a complete re-trial of the cause, except in certain instances mentioned by him. What else can a re-trial be than a re-examination of the facts in the same case?"

The principal case in which it has been held, in the ab-sence of a statute to that effect, that a defendant can be re-tried upon the whole indictment is *The State v. Behimer*, 20 O. S., 572. In fact the supreme court of Ohio have uniformly so held. In *Hurley v. The State, supra*, it is decided that "a verdict in either a civil or criminal case must be considered an entire thing." In *Leslie v. The State*, 18 Ohio State, 390, the plaintiff in error was in-dicted for murder in the first degree. The indictment con-tained three counts, but each alleging and charging the same offense in the same degree. On the first trial he was. found " guilty of murder in the first degree as charged in the first count of the indictment, and not guilty as charged in the second count of the indictment." Upon his motion a new trial was granted, and upon the second trial he was. found "guilty of manslaughter, as charged in the third count of the indictment, and not guilty as charged in the

first and second counts of said indictment." Leslie then moved the court to discharge him, for the reason that on the first trial he was found guilty of murder in the first degree, as charged in the first count of the indictment and not guilty as charged in the second and third counts, and that upon the second trial he was found not guilty upon the first and second counts of the indictment, and guilty of manslaughter upon the third count, and that the verdict of manslaughter was irregular, illegal, and void. The motion was overruled; he was sentenced to the penitentiary, and took error to the supreme court. The conviction was affirmed.

In discussing the question of the entirety of the verdict, Judge White, who wrote the opinion, says: "Where the indictment, though consisting of several counts, is founded upon a single transaction the verdict is a unit, and lays the foundation for but a single judgment. A verdict of guilty upon one of the counts and of not guilty upon the others is followed by the same legal consequences as a verdict of guilty upon all the counts; and when in either case the verdict is set aside and a new trial granted on the defendant's motion, the case is opened for a re-trial upon the counts upon which he was acquitted as well as those upon which he was convicted."

But where the several counts of an indictment are for separate and distinct offenses the rule would of course be different, and it was so held in the case under consideration. The court says, further: "We think the principle contended for properly applies where there is a conviction and an acquittal on different counts for separate and distinct offenses, or where part of the defendants are acquitted and part convicted of the same offense. But where all the counts are for the same offense, and are varied merely to meet the proof, it has no just application."

The ruling in this case was followed in *Jarvis v. The State*, 19 Ohio State, 585. In the case of the *State v. Behimer*,

*supra,* Judge White, in writing the opinion of the court, thus states the question for decision: "The question for decision therefore is, whether the legal effect of granting a new trial was to set aside the whole verdict and leave the case for re-trial upon the same issues on which it was first tried, or, whether the re-trial was properly limited by the court to the degree of homicide of which the defendant had been found guilty, and to the inferior degree of manslaughter." The question is discussed at considerable length and with a good degree of logic and reason, and it was finally held that the defendant in the prosecution could be put upon a second trial upon the whole of the indictment the same as though there had been no previous trial and verdict. In the course of the opinion the learned judge makes use of the following language: "But the effect of setting aside the verdict finding the defendant guilty was to leave at issue and undetermined the fact of the homicide; also the fact whether the defendant committed it, if one was committed. The legal presumption on his plea of not guilty was of his innocence, and the burden was on the state to prove every essential fact. The only effect, therefore, that could be given to so much of the verdict as acquitted the defendant of murder in the first degree, after the rest of it had been set aside, would be to regard it as finding the qualities of an act, while the fact of the existence of the act was undetermined. This would be a verdict to the effect that if the defendant committed the homicide, he did it without deliberate and premeditated malice.

"There can be no legal determination of the character of the malice of a defendant in respect to a homicide which he is not found to have committed, or rather, of which, under his plea, he is in law presumed to be innocent."

Upon the question of the entirety of the verdict it is said: "But upon mature consideration we are of opinion that the verdict is severable only when there is a conviction. or an acquittal on different counts for separate and distinct of-

fenses, or where there are several defendants; but that where there is but one defendant, and in fact but one offense, the verdict is entire."

The cause was taken to the supreme court upon the exception of the state's attorney, and the decision could in no way affect the rights of the defendant in the prosecution, but the rule of law was stated by the court as follows: "Where on a trial for murder the defendant is found guilty of a lower degree of homicide than the highest degree charged in the indictment, and on his motion a new trial is granted, the effect of granting a new trial is to set aside the whole verdict and leave the case for retrial upon the same issues as upon the first trial."

It must be conceded that in point of numbers this decision seems to be against the weight of authority. But it is apparently founded upon reason, and upon the advanced idea of American jurisprudence. That it is just, it seems to us can not be questioned. That it is necessary for the protection of the law-abiding citizen is equally clear, and the fact that many of the states have incorporated a provision to that effect in their criminal laws, gives weight and force to the statement. This decision was made in the year 1870. The criminal law of the state of Ohio was adopted by the legislature of this state in 1873, almost bodily, and by the one act entitled "An act to establish a criminal code," passed March 4th of that year. By it the entire criminal law of that state was substantially transferred to the statute books of Nebraska, and in which was the law governing new trials. In *Franklin v. Kelly*, 2 Neb., 104, Chief Justice Mason, in writing the opinion of the court, says: "The rule is well settled, that when a legislature re-enacts a statute upon which a construction has been placed, it does so with the construction annexed," citing a number of cases. In addition to which we cite 2 Bishop on Criminal Law, § 905, and note from *Commonwealth v. Hartnett*, 3 Gray, 450. While it may be true that the Ohio decisions can not, with

strictness, be said to be a construction of any statute, yet they are a construction of that part of the criminal code which gives to the courts of the state the power to grant new trials, and therefore of the legal status of the person to whom the new trial has been awarded.    To that extent, at least, it is proper to consult those adjudications as affecting the criminal code at the time of its adoption by this state.

But the Ohio cases are not without precedent. In *United States v. Harding*, Wallace (Jr.) Reports, 127, in the circuit court of the United States for the eastern district of Pennsylvania, Harding was found guilty of murder, and Grimes and Williams of manslaughter. Soon after the trial Judge Baldwin, the circuit judge, died. A motion for a new trial was made before and argued to Judge Randall, the district judge, but before passing on the motion he died. New judges were appointed, and upon their qualification the cause came on for decision. The order of the court was that a new trial be granted to Harding, and that as to Grimes and Williams the case be continued for one week, at the expiration of which they were to elect whether they would take a new trial or abide their former conviction. Judge Grier then addressed Grimes and Williams as follows: "William Grimes and John Williams—You ought clearly to understand and weigh well the position in which you now stand. You have been once tried and acquitted of the higher grade of offense charged against you in this indictment, the penalty affixed to which is death; but you have been convicted of the minor offense of manslaughter. Your lives have been in jeopardy, and you have escaped. The constitution of your country declares that 'no person shall be twice put in jeopardy of life or limb for the same offense.' This is to shield you against oppression and injustice, and puts it out of the power of the court to subject you to the danger of another trial except at your election and request. We be-

lieve that you have the right to waive the protection, thrown around you by the constitution for the sake of obtaining what may seem to you a greater good. But let me now solemnly warn you to consider well the choice you shall make. Another jury, instead of acquitting you altogether, may find you guilty of the whole indictment, and thus your lives may become forfeited to the law. If you choose to run this risk, and to again put your lives in jeopardy, it must be by your own act and choice, being neither compelled nor advised thereto by the court; and when your solemn election shall have been put on record the court will hold you forever after estopped to allege that your constitutional rights have not been awarded to you. Before .we enter of record an order for a new trial as to you, we will give you one week to ponder carefully on this. subject, and consult with your counsel as to what will be your safest and best course."

In *State v. Commissioners*, 3 Hill (S. C.), 239, the defendants were indicted—in two counts—for obstructing a public street. The trial resulted in a verdict of guilty as charged in one count of the indictment, nothing being said as to the other. A new trial was granted upon the motion of the defendant. It was held that the next trial must be upon both counts of the indictment. In the opinion, Butler, J., says: "If the verdict of guilty had remained, it would have protected them, perhaps, against another indictment for the same offense. As long as a verdict of guilty remained on the record there was a finding. But what proceeding is there now on it? I consider all the proceedings on the indictment, since the finding by the grand jury, to be set aside at the instance and for the benefit of defendant."

As before stated, the states of Kansas, California, Indiana, and Kentucky have all held to the same doctrine. See *State v. McCord*, 8 Kansas, 232. *People v. Keefer*, *supra. Veach v. The State*, 60 Ind., 291. *Commonwealth*

*v. Arnold,* 6 Crim. Law Mag. (Ky.)    But it is claimed by
plaintiff in error that these decisions were made by virtue
of the statutes of those states which provide in substance
that when a new trial is granted the parties shall be in
the same position as if no trial had been had, some also
providing that the first trial and verdict shall not be re-
ferred to on the second trial, nor shall the first verdict be
plead in bar of a conviction on the second trial either in
the evidence or argument.    It is true the decisions referred
to have in some instances been predicated upon the statutes
referred to, and did a similar statute exist in this state much
of the trouble in this case would be obviated.    But it may
also be observed that if the clause in the bill of rights in
both the federal and state constitutions—that a defendant
shall not be twice put in jeopardy of life or limb for the
same offense—is to be his protection, as argued by his coun-
sel, it is quite clear that a simple legislative enactment of
the states cannot override or take away this protection, and
the enactments referred to would be unconstitutional and
void, and would form no basis for the decisions.    While
many courts holding to the doctrine contended for by
plaintiff in error have based their argument, to some ex-
tent, upon these constitutional provisions, we know of
none holding the statutes authorizing a second trial upon
the whole indictment void.

Again, should we adopt the reasoning of the court in
*People v. Gilmore, supra,* in holding that the statute meant
only that the parties should be in the same position with
reference to the *undecided issues* in the case, then the force
of the statutes, as a basis for the decisions referred to, is
swept away, and the courts of those states may, in effect,
be ranked with those so holding, without the aid of a
statute.    With that view of the case it might well be held,
as in the case last referred to, that the statute gave no
authority for the decision.

So far as the provision of the constitution of the United

States may be invoked, we take it as pretty well settled now that that provision governs the courts existing by virtue of the laws of the United States, and has no application to the state courts. *United States v. Keen,* 1 McLean, 438. *Baron v. Baltimore,* 7 Peters, 243. *Switchell v. Commonwealth,* 7 Wall., 321. *State v. Wells,* 46 Iowa, 662. *Fox v. Ohio,* 5 Howard (46 U. S.), 410. We hold, therefore, that the plaintiff in error was properly put on trial for murder in the first degree; the granting of a new trial having the effect of setting aside all the results of the former trial.

It is next contended that the court erred in overruling the challenge of plaintiff in error to a juror, J. W. B. McAllister, for cause. The examination of this juror was quite extended by counsel on both sides, as well as by the court, and it could serve no good purpose to transfer it to this already lengthy opinion. It is sufficient to say that if the juror had formed an opinion as to the guilt or innocence of plaintiff in error, it was solely upon reading newspaper reports published at the time of the homicide, of the truth or falsity of which he had no opinion, and upon which he seemed to base whatever opinions he had, if any existed. The opinion of the juror was clearly a hypothetical one and could in no way disqualify him. *Curry v. State,* 5 Neb., 415. *Murphy v. State,* 15 Id., 385. The examination made it clear that the juror did not desire to sit in the case and would have been pleased if excused. Yet his answers were doubtless conscientiously given. During the examination by the court he was asked if, notwithstanding what he had heard and read, he could sit as a fair and impartial juror and render a verdict according to the law and evidence. His answer was, "I shall have to answer as I did Judge Mason. I don't know enough to swear I could not."

The Court. "I ask you if, sitting as a juror in this case, you could render a verdict according to the law and evidence as it shall be given you on the trial of the case."

Answer. Well, sir, I guess that I could, I don't know. I am very sorry I have been brought into this case in some way. I am sorry I am troubled in this way. At the same time I would not like to have to reply—to swear. I don't know enough to say. I cannot tell. The newspapers—

The Court. How?

A. I don't know anything further except what I read, and I didn't form an opinion, as I know, as to whether they were right. We take the Omaha *Herald* and Lincoln papers, and local papers, and I don't know whether they were right or wrong; that's as far as I can tell you. * * *

The Court. You have no impression as to whether he is guilty or not of the crime?

A. Yes, necessarily some impression, or it would not have been in the newspaper.

The Court. You have an impression a man was killed?

A. Yes, I have an impression a man was killed.

The Court. You have an impression a man killed him?

A. Yes.

The Court. Whether or not it was excusable, you have no impression?

A. No.

The Court. Then it would not take evidence to remove that?

A. No, it would not."

While the examination of the juror was, at times, not very clear, yet on the whole examination he shows himself to be competent, and the court did not err in retaining him.

The next and last error complained of is the alleged misconduct of counsel for the state while making the closing argument. This alleged misconduct consists in going outside the record, and referring to the Cincinnati riots

which had occurred a few days before the trial. The record discloses the fact that counsel for plaintiff in error had to some extent gone outside of the evidence in his very able argument to the jury, and that the allusion to the Cincinnati riots by the state's counsel was in reply to what had been previously said, and for the purpose, as stated, of illustration. While counsel for the state, especially, should at all times avoid going outside of the record, and while, in a case of this importance especially, we should be in favor of a strict enforcement of the proper rules governing arguments to juries, yet it is impossible for us, in the light of the almost uniform decisions of this court, to say the trial court erred in the matter referred to. We are informed by the record that during the argument of Mr. Watson, when he referred to the Cincinnati riots, the attorney for plaintiff in error said, "I desire to object to the discussion of the Cincinnati riots."

Watson: "I simply refer to it in illustration. I heard counsel state worse."

The Court. "It is not—."

Mason. "Note an exception."

There was no ruling of the district court adverse to plaintiff in error or otherwise. In *Bradshaw v. The State*, 17 Neb., 147, a similar question was before this court, and it was held that "before a case can be reversed and a new trial ordered, it must appear that the court before whom the accused was tried erred, and that such error was prejudicial to the party on trial. The practice in this state is now settled in this respect, and before this court can review questions of this kind the attention of the trial court must be challenged by a proper objection to the language, and a ruling had upon the objection. If the language is approved by the court, and the attorney is allowed to pursue the objectionable line of argument an exception to the decision can be noted." There being no ruling of the court we can not say the court erred. The

question did not afterwards arise, as the line of argument objected to was abandoned.

We find no error in this record. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.