Summers, J.
This case was orally argued to one division of the court, but has been considered by the whole court.
Several questions are raised. First, whether the ordinance violates the requirement of Section 1694, Revised Statutes (1536-620, Bates’ 5th Ed.), that: “No by-law or ordinance shall contain more than one subject, which shall be clearly expressed in its title.” Second, whether a city may issue bonds to provide a fund to' pay the city’s part of the cost of improvements that are in part to be paid for by special assessments. Third, may it issue and sell its bonds to pay its part of an improvement which it has not by resolution declared necessary? Fourth, may it issue and sell its bonds for .that purpose after the passage of such a resolution, but before it has passed an ordinance to proceed with the improvement ?
The requirement of Section 1694 that: “No bylaw or ordinance shall contain more than one subject, which shall be clearly expressed in its title,” evidently was suggested by the provision of Section 16 of Article 2 of the constitution that: “No bill shall contain more than one subject, which shall be clearly expressed in its title.” The latter provision has been held to be directory (Pim v. Nicholson, 6 Ohio St., 176), and if the former were so it would not require further consideration, but it has been held mandatory (Bloom v. City of Xenia, 32 Ohio St., 461; Campbell v. City of Cincinnati et al., 49 Ohio St., 463). No cases interpreting the former provision are cited and the latter having been held directory has not been the subject of much consideration here, and *424 so light as to its meaning is to be sought in cases interpreting similar provisions in the constitutions of other states. .•
In People, ex rel., v. Mahaney, 13 Mich., 481, it is said: “The history and purpose of this constitutional provision are too well understood to require any elucidation at our hands. The practice of bringing together into one bill subjects diverse in their nature and having no necessary connection, with a view to combine' in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislator and dangerous to the state. It was scarcely more so, however, than another practice, also intended to be remedied by this provision, by which, through dexterous management, clauses were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware vof their intention and effect. There was no design by this clause to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus multiplying their number; but the framers of the constitution meant to put an end to legislation of the vicious character referred to, which was little less than a fraud upon the public, and to require that in ever)'- case the proposed measure should stand upon its own merits, and that the legislature should be fairly satisfied of its design when required to pass upon it.” And Judge Cooley says (Cooley’s Const. Lim., 7th Ed., 205) : “The general purpose of these provisions is accomplished when a law has but one *425 general object, which is fairly indicated by its title. To require every end and means necessary or convenient . for the accomplishment of this general object to be provided for by a separate act relating to that alone, • would not only be unreasonable, but would actually render legislation impossible.”
To accomplish the object of the ordinance under consideration thirty-two ordinances might have been passed, or one ordinance might have been so drawn that it could be said to contain thirty-two subjects, and yet the ordinance in question is so drawn that it contains but one general subject,’ viz.: providing funds, by the issuing of bonds, to pay the city’s part of the cost of certain improvements. Of course it is not intended that it may he inferred that the mere form of the ordinance shall determine whether it is in conflict with the statute. To determine that question the ordinance must be examined in the light of the mischief the statute was intended to prevent. The issuing of bonds to pay the city’s part of the cost of such improvements is merely incidental to the making of the improvement, and council can not provide for the making of the separate improvements without the concurrence of- three-fourths of the whole number of members elected to council, unless the owners of a majority of the foot frontage to be assessed petition in writing therefor, and in that event the concurrence of a majority of the whole number elected is essential. And if a greater part of the cost of the improvement than that required by statute is to be paid by the corporation, it must be provided for in the resolution or ordinance providing for the improvement. It *426 would seem, therefore, that the ordinance in question is not within the mischief intended to be prevented by the statute. The following illustrative cases may be referred to. In State v. Wells, 46 Iowa, 662, the title of the ordinance was: “An ordinance defining and prescribing punishment for certain offenses.” The ordinance defined and prescribed the punishment for twenty-six offenses, and it was contended that the ordinance had as many subjects. Beck, J., said: “This is clearly a mistake. The subject of the ordinance is offenses against the city. The one subject is composed of many parts.” In City of Seattle v. Barto, 31 Wash., 141, the ordinance is entitled: “An ordinance to license and regulate certain trades and occupations in the city of Seattle, providing penalties for the violation thereof, and repealing all ordinances . inconsistent therewith.” The ordinance contained provisions relating to the licensing and regulating of various trades and occupations, among which were auctioneers, second-hand dealers, billposters, hotel runners, persons engaged in the temporary sale of goods, and pawnbrokers. Fullerton, C. J., says: “It was not intended by the requirement contained in the charter that the city council should not pass an ordinance having a general object, and bring within its terms all matters pertaining to that object, whether it embrace a number of persons or a variety of trades and occupations. The term ‘object’ was not used in the sense of ‘number’ or ‘variety,’ nor was .it intended to require a distinct legislative act for each particular matter legislated upon. It was intended to prevent the union in one act of diverse, incongruous and discon *427 iiected matters, having no relation to or connection with each other, but was not intended to prevent the lawmaking power from enacting under a general title provisions affecting a variety of matters, so long as there is a natural connection between the several matters and the object named in the title.” The opinion is too long to quote, but is deserving of consideration by any one investigating the question. In City of St. Louis v. Weitzel, 130 Mo., 600, an ordinance entitled, “An ordinance regulating the keeping, storing and handling and licensing the removal of garbage, grease, offal and other refuse matter composed of either animal or vegetable matter,” and to repeal a prior ordinance on the same subject, “and prescribing penalties for the violation thereof, and fixing a license tax on vehicles used for the removal of garbage,” was held not to be in violation of such a provision, for the ordinance itself relates only to garbage and offal. And in Weber v. Johnson, 37 Mo. App., 601, an ordinance which provided both for the grading and paving of an alley was upheld. In Stebbins v. Mayer, 38 Kan., 573, the title of the ordinance was, “An ordinance prohibiting animals from running at large in the city.” Section 1 provided what animals should be prohibited from- running at large, but Section 2 provided that no person should keep a dog within the limits of the city without complying with certain regulations, among which was the payment of a tax, and directing the city marshal to kill all dogs found running at large whose owners had not complied with such regulations, and making the owner liable for criminal prosecution for failure to comply therewith, and for that *428 reason it was held to be in violation of the provision that: “No ordinance shall contain more than one subject, which shall be clearly expressed in its title.”
Before the present Municipal Code cities were authorized to assess the cost and expense of such improvements upon the abutting property, excepting that not less than one-fiftieth of the cost and expense of the improvement and the estimated cost of that part of it included in street intersections was required to be paid by the city. The city was not authorized to levy a tax to provide a fund from which its part of such cost might be paid from time to time as improvements were made, but the amount it was to pay was, when ascertained, assessed upon all the taxable property in the city and certified to the county auditor for .collection as other taxes. This levy could not be made until the improvement had been ordered, which could be done only by ordinance after the expiration of the time limited for the filing of claims .for damages. When the improvement was extensive, or there were numerous improvements, or the city elected to pay a larger proportion of the cost, often the burden was too large to be borne in one year and bonds could be issued only when authorized by an election. The steps necessary to the making of an improvement were so numerous that they made it impracticable in many instances for public officials to originate and complete an improvement during their term ■ of office, hence the fruitful source of much special legislation. To remove this mischief, the so-called Longworth bond law was passed (95 O. L., 318). At that time provision was made, by Sec-' *429 tions 2835, 2836 and 2837, Revised Statutes, that bonds might be issued for twenty distinct purposes,, therein specified, and that in addition -to the taxes otherwise authorized, a tax sufficient to pay the bonds falling due, and the interest thereon, should be levied every year during the life of the bonds; provided, that before the bonds. were issued, or any tax levied, the question of issuing the bonds should be determined at a general or special election.
Among the purposes enumerated in Section 2835 for which bonds were authorized, was the construction of sewers. The Longworth law added a number of.purposes, among them: “22. For resurfacing, repairing or improving any existing street or streets as well as other public highways.” “23. For opening, widening and extending any street or public highway.” “24. For purchasing or condemning any land necessary for street or highway purposes, and for improving the same or paying any portion of the cost of such improvement,” and provided that bonds for any or all of the enumerated purposes might be issued whenever declared necessary by the affirmative vote of .two-thirds of the members of the municipal legislative body. The act limited the amount of bonds that might be issued in any one year to one per cent, of the total tax value of all the property in the corporation, and the .aggregate of such bonded indebtedness unpaid to four per cent, unless an excess, but in no event to exceed eight per cent., was authorized by the electors at a general or special election. This law was not repealed, but was expressly continued in force by Section 100 of the Municipal Code of 1902, and is sufficiently com *430 prehensive to include the issuing of bonds for the purpose specified in the ordinance.
The substance of Sections 2273 and 2274, Revised Statutes, providing that the city should pay for the intersections -and not less than one-fiftieth of the cost of the improvement, was embraced in Section 53 of the Municipal Code of 1902, and this provision was added: “Provided, that any city or village is hereby authorized to issue and sell its bonds as other bonds are sold to pay the corporation’s part of any improvement as aforesaid, and may levy taxes in addition to all other taxes authorized by law to pay such bonds and the interest thereon.” If this was the only authority to issue bonds for this purpose, it might be that there was power only to meet the city’s part of the cost by issuing bonds instead of by a levy, and, as the latter could not be made until an ordinance to proceed with the improvement had been passed, that counsel’s contention is sound that that is a prerequisite to the issuing of the bonds. But, as has been shown, the authority already existed in the Longworth law, and the provision in Section 53 is not to be construed as limiting the powers conferred by the Longworth law, but as a grant of additional power. Attention to the provisions of the Longworth law, as well as to the provisions of the sections that it amended, will disclose that, as there conferred, the power was not limited to the issuing of bonds to pay the city’s part of the cost of improvements that had been provided for by ordinance, but might be exercised when they were merely contemplated. It was not necessary that a resolution should have been passed declaring the intention to make the improvement, but the state *431 ment in the ordinance providing for the bonds, that they were to be issued for a specific purpose, was sufficient evidence of the intention.
The requirement of Section 1536-285, Revised Statutes, that bonds issued for" a street' improvement shall have the name of the street written or printed upon them, and the requirement of Section 1536-287, Revised Statutes, that bonds issued to pay for sewers in a district shall have written or printed upon them the name and number of the district, do not apply to bonds issued to pay the city’s part of the cost of such improvements, but to bonds issued in anticipation of special assessments. This will appear on inspection of the original sections, and there is reason- why such requirement should be made respecting special assessments and • none occurs respecting the part paid by the city. The special assessment is based upon the special benefits from the particular improvement to the property assessed, and can be applied to no other purpose, and it is important, therefore, that the bonds issued in anticipation of its collection be identified, but the assessment to pay the city’s part. of the cost of such improvements is a tax levied upon all the taxable property of the city, and while it may be applied only to the purpose for which it was levied, yet it is not material so long as it is so used that the particular improvement be identified.

Judgment affirmed.

Si-iauck, C. J., Price, Crew, Spear and Davis, JJ-, concur.