THOMAS W. BLACKBURN, APPELLANT, v. CITY OF OMAHA ET AL., APPELLANTS; OMAHA GAS COMPANY, APPELLEE.

FILED MAY 5, 1910. No. 16,018.

Cities: ORDINANCES: VALIDITY. Under the charter of the city of Omaha, as it existed October 11, 1905, an ordinance not published two weeks before it was passed *held* void, where it modified conditions of a former ordinance under which the Omaha Gas Company obtained its charter.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Reversed with directions.*

*Weaver & Giller, H. E. Burnam* and *John A. Rine,* for appellants.

*W. J. Connell* and *W. H. Herdman, contra.*

ROSE, J.

This is a suit for an injunction to prevent the enforcement of a lighting contract executed by the city of Omaha and the Omaha Gas Company, defendants. The validity of the contract, and of the ordinance authorizing it, was properly raised by the pleadings. The action was dismissed after a full hearing, and Thomas W. Blackburn, plaintiff, and the city of Omaha, defendant, appeal.

By the contract in controversy the Omaha Gas Company assumed the obligations imposed by a lighting ordinance containing the following provisions: "That the contract be made with the Omaha Gas Company for a minimum number of twelve hundred (1200) Welsbach street lamps, the same to be provided by said company with Welsbach burners, and each of said lamps to have a capacity of giving and to give, when lighted, during the entire term of said contract a light equal to eighty (80) candles, the said lamps to be maintained, lighted and extinguished by said company during said term, and the gas and equipment therefor to be furnished and provided by said company, all for the price of twenty-eight ($28) dollars per lamp per year for the period of five years commencing January 1, 1906." This ordinance and the contract made pursuant thereto are assailed on the following grounds: The lighting ordinance is a modification of the terms and conditions of a former ordinance containing the franchise of the Omaha Gas Company, and is illegal and void, because it was not published two weeks prior to its passage; and the lighting contract is illegal and void, because it violates the terms and conditions of the franchise ordinance. A section of the ordinance granting the franchise is as follows: "Said grantee further agrees for itself, its successors and assigns that it will supply and sell to the

said city of Omaha during the continuance of this ordinance all gas which it may be required by said city to supply to the city for its use in its public buildings at the rate of $1 per thousand cubic feet; and that it will, when and so often as requested so to do by said city of Omaha during the continuance of this ordinance, bid for the supply of gas to the city for street lamps along the line of its mains at a rate which shall not exceed for each lamp burning gas at the rate of five feet per hour, $25 per annum per lamp lighted every night one-half hour after sunset and extinguished one hour before sunrise, said sum to include lighting, extinguishing and cleaning."

It is argued that these conditions of the ordinance containing the Omaha Gas Company's franchise were modified by the later ordinance under which the lighting contract in controversy was made, and that the modification was a violation of that provision of the Omaha charter which declares: "No ordinance granting, extending or modifying the conditions of any franchise shall be passed until at least two weeks shall have elapsed after its introduction, nor until after the same has been published daily for two weeks in two established daily papers of the city." Comp. St. 1905, ch. 12a, sec. 16. The lighting ordinance was introduced October 3, 1905, and without publication was passed at a special session of the council October 11, 1905. The contract was executed the same day. It is conceded by the Omaha Gas Company that the lighting ordinance was not published for two weeks before it was passed, but it is insisted the franchise ordinance was not modified in any particular, and that therefore publication was unnecessary. The franchise ordinance requires the Omaha Gas Company, "when and so often as requested" by the city, to bid for the supply of gas at a price not to exceed $25 a lamp annually, and at the rate of five cubic feet an hour for each lamp, including lighting, extinguishing and cleaning. Under this provision the city, "when and so often as requested" by it, is entitled to a bid which complies with the terms of the fran-

chise ordinance. The rule is that bids must meet the requirements of the law under which they are made. *State v. York County*, 13 Neb. 57; *Weed, Parsons & Co. v. Beach*, 56 How. Pr. (N. Y.) 470; *Boren & Guckes v. Commissioners of Darke County*, 21 Ohio St. 311. Within the jurisdiction of the city the franchise ordinance has the same force as an act of the legislature. Until modified or repealed it is in its original form binding alike on both the city and the Omaha Gas Company. The rights and obligations created by it can only be abrogated or modified in the manner provided by law. In no other way can the city divest itself of the rights created by the franchise ordinance, or release the grantee from its obligations, or deprive the public of the benefits secured. The Omaha Gas Company is in the same situation. The necessity for protecting the conditions imposed by franchise ordinances is so urgent that the legislature has enacted a specific statutory provision on that subject. A section of the Omaha charter declares that such conditions can only be modified by an ordinance passed after it "has been published daily for two weeks in two established daily papers of the city." Comp. St. 1905, ch. 12a, sec. 16. It thus appears by statute that modifications of the conditions of franchise ordinances in cities of the metropolitan class are matters requiring publicity. Haste and secrecy in making such changes are condemned by law. Without two weeks' publication the city council passed the lighting ordinance containing the provisions already quoted. That ordinance required the Omaha Gas Company to furnish a minimum number of Welsbach street lamps, including gas, equipment and maintenance, for $28 a year each. These are not the conditions of the bid which the Omaha Gas Company is required by the franchise ordinance to make, "when and so often as requested" by the city. There is an obvious variance, and the lighting ordinance is mandatory. It requires the making of a lighting contract on terms different from the conditions of the bid required by the franchise ordinance. The

right of the city to call for such a bid is not reversed. The lighting ordinance requires a contract covering a period of five years, and provision is made for complying with its terms during that time. The lighting contract contains the terms prescribed by the lighting ordinance, and the right of the city to call for a bid in conformity with the franchise ordinance is not recognized. Before the lighting ordinance was passed the gas company was required by the franchise ordinance, "when and so often as requested" by the city, to bid for the supply of gas at a price not to exceed $25 a lamp annually and at the rate of five cubic feet an hour for each lamp, including lighting, extinguishing and cleaning. After the lighting ordinance was passed, if valid, the gas company was not required to make such a bid, "when and so often as requested" by the city, but was relieved from that obligation for the period of five years, and in the meantime was protected by a contract to supply gas on different terms, while the city had lost the right to request such a bid during the same period. If the franchise ordinance could be thus changed for five years by an ordinance not published before it was passed, it could be changed in like manner for the full term of the gas company's franchise. In such an event the city would be permanently deprived of the benefit of conditions which, under the city charter, could only be modified by an ordinance passed after two weeks' publication. The obligation of the gas company to make bids was changed, reduced, qualified and limited as to time at least.

Was the franchise ordinance modified? "Modified", according to the Century Dictionary, means "to qualify; especially, to moderate or reduce in extent or degree." In construing the clause "may modify or abolish grand juries," as used in the constitution of Oregon, the supreme court of that state said: "In a general sense, to modify means to change or vary, to qualify or reduce; and unless there is something in the context, or special usage, the words are to be taken in their plain, ordinary,

and popular sense. A power given to modify or abolish implies the existence of the subject matter to be modified or abolished. When exercised to modify, it does not destroy identity, but effects some change or qualification in form or qualities, powers or duties, purposes or objects, of the subject matter to be modified, without touching the mode of creation. The word implies no power to create or to bring into existence, but only the power to change or vary in some particular an already created or legally existing thing." *State v. Lawrence,* 12 Or. 297. Within the meaning of the city charter, there was certainly an attempt to modify the conditions of the franchise ordinance, and to accomplish that result by means of a lighting ordinance which had not been published two weeks before it was passed. For the reasons stated, the lighting ordinance and the contract made under it are void.

The judgment of the district court is therefore reversed and the cause remanded, with directions to allow the injunction.

REVERSED.

SEDGWICK, J., not having heard the argument, took no part in the decision.

LETTON, J., dissenting.

I cannot accept the reasoning of the majority opinion. By the terms of its franchise the gas company contracted that it would, "when and so often as requested so to do by said city", bid for street lighting at a rate not exceeding, "for each lamp burning gas at the rate of five feet per hour $25.00 per annum per lamp lighted every night one-half hour after sunset and extinguished one hour before sunrise, said sum to include lighting, extinguishing and cleaning."

The city made no agreement or contract upon its part to light its streets with gas, but as a condition for the grant of the franchise, exacted from the gas company the foregoing provision. The city became under no obliga-

tions to take gas from the gas company, but the gas company is obligated to offer to supply it to the city at the price fixed by the franchise ordinance for the service therein specified.

The opinion holds that because the city enacted an ordinance authorizing its officers to enter into a contract for street lighting by the use of Welsbach mantels and appliances upon different terms than those which the gas company were required by the ordinance to offer when so requested, the franchise ordinance was modified. The reason assigned is that by entering into a contract for five years with the gas company the city had lost the right to request such a bid from the gas company and the gas company was relieved from that obligation for the same period. I cannot so consider.

The invention of the Welsbach system of incandescent lighting, whereby a more economical and better system of illumination than the old system of lighting by the naked gas flame has been devised, and which is in general use, made it entirely proper for the city to adopt the im-. proved method of lighting its streets.

It was not bound by the franchise ordinance to adhere to or adopt any system of lighting. It might use gas, electricity, gasoline, or any other system. It might disregard the old plan and adopt a new if in its judgment it seemed wise to do so. If this contract had been entered into with a competitor of the gas company, how could such an entirely independent contract be in any wise a modification of the franchise? The effect would be precisely the same as to the rights of the city and the gas company. The obligation of the gas company to make the specific bid would still exist, notwithstanding the city had entered into a contract with a third party to light its streets for five years. And so, when it entered into this contract with the gas company, the company is not relieved from its franchise obligation, nor is the city prevented from calling upon it "when and so often" as the proper officers deem it for the best interest of the city

to call for such bids. Suppose that, for some reason or other, the city should desire to return to the naked flame system, could it not compel the gas company to bid under the franchise ordinance, leaving the question of damages for a breach of the present contract to be settled according to the legal principles governing such a breach; or, suppose that a competitor's bid had been accepted and it had failed to comply with the contract, or after beginning service had stopped performance, could not the city still call upon the gas company for a bid under the provisions of the franchise ordinance?

By the franchise ordinance, the gas company was bound, while the city was free. The gas company was under obligations to propose when requested, but the city was under no obligations to accept. This being so, and the city officials having deemed it best to adopt a plan of lighting not covered by any provisions of the franchise ordinance, how can it logically be said that the provisions of that ordinance have been modified?

I think this contract was made entirely outside of the provisions of the franchise ordinance, and I am unable to see any sound reason for the holding that "the obligation of the gas company to make bids was changed, reduced, qualified, and limited" by the new ordinance.