COMMONWEALTH *vs.* JOHN F. BROWN.

Nantucket.    October 23, 1888. — November 26, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Offence against Town and County of Nantucket — Qualification of Inhabitants as Grand and Traverse Jurors — Warning of Town Meeting for Listing and Drawing Jurors — Forgery of "Discharge for Money."*

The inhabitants of the town and county of Nantucket, which are territorially the same, are not disqualified by reason of interest to serve as grand jurors in presenting an indictment for an offence against the town or county, or as traverse jurors at the trial, or to act officially in listing and drawing such jurors.

A person was sworn as one of a grand jury, and acted with them in their deliberations and in the presentment of an indictment, his name having been placed in the jury box and drawn and returned by the selectmen in response to a venire, although previously the town had ordered it to be stricken from the jury list. *Held,* that, in the absence of evidence of his personal disqualification, the indictment was not invalidated by the irregularity by which he came to serve.

At the trial of an indictment for forging and uttering, with intent to defraud a town or county, certain writings, each of which was described as a "discharge for money," and purported to be a bill rendered to the town or county and duly receipted upon payment, it appeared that the bills so receipted were forged by the defendant, who was a town and county officer, and were presented by him to the disbursing officers of each as vouchers for the reimbursement of moneys assumed to have been expended by him, but without authority, on behalf of each; and that the amounts therein set forth were duly paid to him, no other writing or claim for such alleged reimbursement being presented by him. *Held,* that the indictment was sufficient, and that there was no variance.

INDICTMENT, returned at July term, 1888, of the Superior Court of the county of Nantucket, in twenty-two counts, for forging and uttering certain writings, each of which was described as a " discharge for money," and purported to be a bill

rendered to the town or county of Nantucket by various persons or firms for personal services, for rent .of post-office box, and for articles furnished to each, and to have been duly receipted upon payment thereof.

Upon the day following the return of the indictment, the defendant filed this special plea to the presentment : " 1. Because the said grand jury received and had with them, and there was sworn as one of said jury, one Andrew D. Winslow, who had not been legally put upon the list of jurors, or legally drawn for jury service ; and said Winslow, although a stranger and not legally of the grand jury, was permitted to and did share in their deliberations and their action upon said indictment, and in the return of the same. 2. Because the list of jurors from which the said jurors were selected was not legally accepted by the inhabitants of the town of Nantucket at a legal meeting. 3. Because the names of said grand jurors were not drawn from the list of jurors in the manner provided by law. And this the said Brown is ready to verify."

To this plea the district attorney filed a replication, which traversed the allegations of the plea.

At the hearing upon the plea and replication, before *Dunbar*, J., the following facts appeared. The alleged forgings and utterings were committed, if at all, by making or raising vouchers, which were presented to the town or county treasurer of Nantucket, and were claimed by the government to have been done with intent to defraud either the town or the county. The name of Winslow was upon the list of jurors prepared by the selectmen of the town of Nantucket, but at the town meeting to which the list was submitted for revision was ordered to be stricken from the list by vote of the town. His name was however placed or left in the jury box, and was drawn by the selectmen and returned to the court in response to a venire, and he was sworn as one of the grand jury, and took part in their deliberations and in the return of the indictment. The warrant for the town meeting at which the jury list was revised was dated May 26, 1888, and was addressed to either of the constables of the town, and directed the notification of a meeting to be held on June 2, 1888, and the service of the warrant by posting copies of the same in two public places within the town, which

were named, but fixed no time for such posting. The return of the constable upon the warrant was: " Pursuant to the within I have notified and warned the inhabitants of the town of Nantucket qualified to vote in town affairs to meet at the time and place and for the purposes, within mentioned, by posting up notices thereof in two public places in said town."

Subsequently, the drawing of the jurors was conducted by the selectmen at a town meeting called for the purpose, the warrant for that meeting and the return thereon being similar in form to the warrant and the return for the former meeting. There was no evidence of any by-law or vote of the town as to the service of warrants, or the warning or calling of meetings, or of any action of the town with reference to the drawing of jurors in town meetings.

Upon these facts the defendant asked the judge to rule as follows: " 1. That the presence of Winslow with the grand jury, and his taking part in their deliberations and in the presentment of the indictment, vitiated the presentment, and that the defendant could not be called upon. to plead thereto, or be held to trial thereon. 2. That the grand jury was illegally drawn and returned into court; that it was not a legal grand jury, and that its presentment was not a valid presentment against the defendant. 3. That, by reason of bias and interest, a grand jury drawn and made up from the inhabitants of the town and county of Nantucket was not competent to make a presentment for crimes against the county or the town treasury." The judge declined so to rule, but ruled that the presentment was valid, and overruled the plea; and the defendant excepted.

The defendant was then called to plead to the indictment; but before pleading generally thereto he filed a plea to the sufficiency of the traverse jury, which stated reasons similar to those set up in the second and third grounds of the plea to the presentment of the grand jury. At the hearing upon this plea, it appeared that the revision of the list of traverse jurors which had been prepared by the selectmen, and the drawing of such jurors in response to the venire, took place at the same meetings at which the revision of the list of grand jurors and the drawing of the same took place, and the defendant requested the judge to

make rulings with regard to the traverse jurors similar to those recited in the second and third rulings requested as to the grand jury. The judge refused so to rule, but ruled that the traverse jurors were competent to try the defendant on the indictment, and overruled the plea ; and the defendant excepted.

The defendant then pleaded not guilty, and, at the trial, evidence was introduced tending to show that the receipted bills described in the indictment were presented by the defendant, who was the town and county clerk and the clerk of courts for the county, to the town or county disbursing officers, and were received and acted upon by them, not as claims then due to the persons named as creditors in the bills, but as genuine vouchers for moneys assumed to have been expended by him in behalf of the town and county without any express authority therefor, simply as evidence to support claims by him for reimbursements, no other writings reciting claims for reimbursements being presented by him ; and that the defendant actually collected from such disbursing officers the amounts set forth in these vouchers, with intent to defraud.

At the conclusion of the evidence, the judge refused to rule, as requested by the defendant, among other things, as follows : 1. As between the defendant and the town or the county, no one of the alleged forged papers was a discharge for money within the statute as to forging and uttering. 5. If any person makes a purchase, or pays a bill, assuming to act for the county, but as a volunteer, and claims reimbursement therefor, a receipted bill of the purchase or payment made by him for which he claims reimbursement is not a discharge for money, and under the counts of this indictment charging the forgery or uttering of such vouchers there would be a variance, and the jury should acquit by reason of a variance. 9. Upon an indictment for forging or altering a discharge for money, the intent must be to defraud some person party to the instrument, and not a person to whom the instrument is intended to be exhibited collaterally, and merely as evidence or as a voucher for an independent claim. 11. Upon the evidence, there is a variance as to the description of the instrument in each count, and there must be an acquittal by reason of variance. 12. Upon the evidence, unless the jury find an intent to defraud some person other than the

town or county of Nantucket, they cannot convict upon any count.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*H. W. Chaplin,* (*L. E. Griswold* with him,) for the defendant.

*H. C. Bliss,* Assistant Attorney General, for the Commonwealth.

KNOWLTON, J. The indictment in this case contains twenty-two counts, some charging the defendant with forging, and others with uttering, discharges for money, payable from the treasury of the town and county of Nantucket. The defendant pleaded in abatement to the indictment, and upon the facts which appeared at the hearing he asked the court to rule, that, "by reason of bias and interest, a grand jury drawn and made up from the inhabitants of the town and county of Nantucket was not competent to make a presentment for crimes against the county or the town treasury." The court refused so to rule, and ruled that the presentment was valid.

We may assume that the defendant is right in his contention that objections to an indictment on account of the disqualification of a grand juror may be taken when the defendant is first called upon to plead to the indictment; for, under our practice, it commonly happens that he has no opportunity to make his objection earlier. See *Commonwealth* v. *Parker,* 2 Pick. 550, 559; *State* v. *Symonds,* 36 Maine, 128; *United States* v. *Hammond,* 2 Woods 197. At a later stage of the proceedings the defendant made a similar objection to the jury of trials, which was also overruled. These questions, founded on the alleged interest of the jurors as residents of the town and county of Nantucket, are substantially the same in relation to the grand jury and to the traverse jury.

The general rule, that judges and jurors should not be interested in a controversy which they are called upon to settle, is founded upon familiar principles of justice. But there are some kinds of interest which are too minute and too remote to be regarded. Every citizen of the Commonwealth is interested in the enforcement of the laws. But if that interest disqualified him from sitting as a juror, or otherwise participating in a trial, no criminal could be punished. From the necessity of the case,

we trust the integrity and sense of justice which most men possess so far as to believe that they will not be improperly influenced by an interest of this kind, which they have in common with the whole community.

In the case at bar, the inhabitants of Nantucket had no direct pecuniary interest in the proceedings. The town and county treasury could not be in any way affected by the result of the prosecution. The judgment which might be rendered could not be used as evidence in a subsequent civil suit. They had no interest different in kind from that of all the people of the Commonwealth. We by no means suggest that a victim of a crime should ordinarily be permitted to sit as a juror to try a person accused of committing it, for his feelings would be likely to be so aroused as to render him unfit for such a service. His relation to the matter under investigation would naturally lead him to form an opinion as to the. guilt of the defendant, or would induce bias or prejudice ; and if this appeared, he would at once be set aside as disqualified to serve as a juror. But the crimes charged in this indictment were not against any of the persons who were upon the jury. They were committed against the town or county of which the jurors were inhabitants ; and the bias, prejudice, or other kindred feeling, which might be expected in an individual who had suffered grievous wrong, would not be likely to exist in reference to. a crime against the public treasury.

Some of the inhabitants might be so far affected in their feelings as to be unfit for jurors. In respect to the traverse jurors, the defendant could have protected his rights in that particular by asking for an examination of them before they were impanelled. See *Commonwealth* v. *Moore*, 143 Mass. 136 ; *Boston* v. *Baldwin*, 139 Mass. 315. In regard to the grand jury, it is always possible that some of the jurors will be subject to bias, or will have formed an opinion, in some of the numerous cases which commonly come before them. That possibility is contemplated in the statute which prescribes the form of the oath to be administered to them. Pub. Sts. c. 213, § 5. But the function of that jury is merely to present an accusation for trial, and it may be presumed that one conscious of interest or bias in a particular case would refrain from acting in it. It should not

be held that mere inhabitancy unfits one for sitting as a juror in an ordinary prosecution of an offence against the town in which he lives.

A direct financial interest stands on somewhat different grounds. *Clark* v. *Lamb*, 2 Allen, 396. *Hawes* v. *Gustin*, 2 Allen, 402. *Hush* v. *Sherman*, 2 Allen, 596. But it has often been held that the Legislature may provide that such an interest, if very slight, shall not disqualify one from acting as a judge or juror. *Commonwealth* v. *Ryan*, 5 Mass. 90. *Hill* v. *Wells*, 6 Pick. 104. *Commonwealth* v. *Emery*, 11 Cush. 406. *Commonwealth* v. *Reed*, 1 Gray, 472. *State* v. *Batchelder*, 6 Vt. 479. *Diveny* v. *Elmira*, 51 N. Y. 506, 512. *State* v. *Williams*, 30 Maine, 484. See Pub. Sts. c. 160, § 13; c. 161, §§ 4, 5, 6, 9, 11; c. 170, § 38. And the legislative intention that a slight financial interest shall not disqualify a juror is readily inferred where otherwise there would be a failure of justice. *Commonwealth* v. *Ryan*, 5 Mass. 90. *Commonwealth* v. *Worcester*, 3 Pick. 462. *Commonwealth* v. *Burding*, 12 Cush. 506. *Hawes* v. *Gustin*, 2 Allen, 402. *Commonwealth* v. *McLane*, 4 Gray, 427. *State* v. *Intoxicating Liquors*, 54 Maine, 564.

In *Connecticut* v. *Bradish*, 14 Mass. 296, which was a civil suit brought by the State of Connecticut to foreclose a mortgage, it was held, under the law prohibiting interested persons from testifying, that an inhabitant of that State was not an incompetent witness. In *State* v. *Batchelder*, 6 Vt. 479, it was decided that a justice of the peace might try a criminal case in which the fine to be paid upon conviction went to the town where he lived; and in *Middletown* v. *Ames*, 7 Vt. 166, it was said that the rule applied equally to jurors, and it was held that a suit to recover for a breach of a recognizance might be tried before jurors from the town to which the fine would have gone had there been a conviction in the original case. In *State* v. *Wells*, 46 Iowa, 662, it was held to be no objection to a juror that the trial was for a violation of an ordinance of his own city.

Where a municipality has no direct pecuniary interest in a trial, but only such an interest as might result from the commission of an offence against its property, neither our Legislature nor the courts have been accustomed to treat its interest as affecting the qualifications of its inhabitants to sit as jurors. Statutes have been passed removing the disqualification of jurors

in certain criminal cases which may affect pecuniary interests. The Pub. Sts. c. 170, § 38, covers cases where the fine or forfeiture goes into the treasury of the county, city, or town, and it was probably thought that in others like the one at bar there was no such interest as made it necessary to include them. See *Phillips* v. *State*, 29 Ga. 105; *Doyal* v. *State*, 70 Ga. 134. Our statutes provide that, in certain cases, criminal trials may be had in counties other than that in which the offence was committed. Pub. Sts. c. 11, § 27; c. 150, §§ 24, 26; c. 202, §§ 9, 10, 31; c. 210, § 7; c. 213, §§ 19–24.

But this is not one of those cases, and the indictment in it could have been found, and the trial could have been had, in no other county than Nantucket. We are of opinion that our statutes must be held to be a legislative declaration that jurors residing in Nantucket, if otherwise unobjectionable, were competent to sit in the trial of it. The same considerations which induce us to hold that the inhabitants were not disqualified from sitting as jurors, apply with still greater force to the defendant's contention that the officers of the town and county were disqualified from acting in relation to the drawing and summoning of the jurors.

The defendant also asked the court to rule that the indictment was bad, and that the traverse jurors could not sit to try it, because the meetings of the inhabitants of the town at which the jury list was revised and at which the jurors were drawn were not legally warned. But it does not appear that they were not legally warned. There were proper warrants, seasonably issued, with a return of the officer upon each of them saying that he notified and warned the inhabitants pursuant to the warrant. The most that can be said in favor of the defendant's contention is, that it does not distinctly appear by the returns that the postings were as long as they should have been before the respective meetings. But we are of opinion that, in a case of this kind, it is not to be assumed upon the evidence that the proceedings were illegal in this particular. *Houghton* v. *Davenport*, 23 Pick. 235. *Briggs* v. *Murdock*, 13 Pick. 305. *Wallace* v. *Townsend Parish*, 109 Mass. 263. *Ford* v. *Clough*, 8 Greenl. 334.

The view which we have taken of the preceding questions makes it unnecessary to consider whether the defendant's objec-

tion to the traverse jury, taken by plea, was correct or sufficient in form.

Another objection to the indictment, raised by the plea first referred to, was that Andrew D. Winslow was not legally drawn as a grand juror, because his name was, by vote of the town, ordered to be stricken from the list of jurors prepared by the selectmen, and submitted to the town for revision. The fact here relied on was proved at the hearing before the judge; and it further appeared that, notwithstanding this, his name was placed or left in the box, and was drawn by the selectmen in response to the venire of the court, and was returned to the court, and he was sworn as one of the grand jury, and acted with them in their deliberations and in the return of the indictment. It has often been held in other jurisdictions, that an indictment found by a grand jury upon which a disqualified person is sitting is void; for it is not certain in such a case that the indictment was found by twelve qualified jurors. The disqualified person may have been one of only twelve who voted for the indictment. 2 Hawk. P. C. c. 25, § 28. *United States* v. *Hammond*, 2 Woods, 197. *State* v. *Symonds*, 36 Maine, 128. *Doyle* v. *State*, 17 Ohio, 222. *State* v. *Cole*, 17 Wis. 674. *Barney* v. *State*, 12 Sm. & Marsh. 68.

How such an indictment should be regarded is a question which we need not decide; for a distinction must be noted between a juror who is personally disqualified, and one who possesses all the requisite qualifications, but is irregularly and improperly drawn. The general rule is, that mere irregularity in the proceedings by which a juror gets upon the panel does not affect the validity of his action. *Commonwealth* v. *Parker*, 2 Pick. 550, 559. *Page* v. *Danvers*, 7 Met. 326. *United States* v. *Reeves*, 3 Woods, 199. *United States* v. *Ambrose*, 3 Fed. Rep. 283. *Hill* v. *Yates*, 12 East, 229, 230. *The King* v. *Hunt*, 4 B. & Ald. 430. *Hardin* v. *State*, 22 Ind. 347. Nearly all the cases in which verdicts or indictments have been set aside rest upon an absolute disqualification of a juror. Such were *United States* v. *Hammond*, 2 Woods, 197; *Doyle* v. *State*, 17 Ohio, 222; *State* v. *Cole*, 17 Wis. 674; *Barney* v. *State*, 12 Sm. & Marsh. 68; and *State* v. *Duncan*, 7 Yerg. 271. The case of *State* v. *Jacobs*, 6 Texas, 99, cited by the defendant, has been reviewed and

explained in *Vanhook* v. *State*, 12 Texas, 252, which sustains the contention of the Commonwealth. *Dutell* v. *State*, 4 G. Greene, 125, depends upon a local statute.

Another distinction which should be observed is that between the case of a juror chosen by a method wholly illegal and unwarranted, and one where the regular course of procedure is pursued in general, but is not strictly and properly followed. *State* v. *Symonds*, 36 Maine, 128, was a case of the former kind, in which the selection of talesmen for a grand jury was held to be without jurisdiction and wholly illegal, and the jurors were decided to be incompetent to serve. The difference between such a proceeding and a failure to regard some of the requirements of the law, where there is an honest effort to act under it, is referred to in *United States* v. *Ambrose*, 3 Fed. Rep. 283, a case which was very similar to the one at bar. Inasmuch as there was nothing to show that Winslow was disqualified to serve as a juror, or that his being drawn was anything else than an irregularity, we are of opinion that the ruling of the court upon this point was correct.

The only remaining exceptions relied upon are to the refusal of the judge to grant the first, fifth, ninth, eleventh, and twelfth requests for instructions to the jury. The several papers referred to in the indictment were sufficiently described as discharges for money. There was no variance. Upon an indictment for forging or uttering these papers, the circumstances in relation to the payment referred to in the requests were immaterial. The intent to defraud referred to in the statute may relate to a party who is not named in the instrument. Pub. Sts. c. 214, § 26; Pub. Sts. c. 204, § 1. *Commonwealth* v. *Costello*, 120 Mass. 358.

*Exceptions overruled.*