STATE OF MINNESOTA v. SABINA J. COOLEY and Others.

June 8, 1898.

Nos. 10,956—(14).

**Grand Jury—Member Disqualified but not Acting—Indictment Legal.**
Where a grand jury is composed of not less than 16 members and not more than 23, its action is not vitiated by reason of there being drawn as one member thereof a disqualified person, he being excused before the charge in the indictment is considered. The remaining jurors—not less than 16 being present when the matter before them is under con-

sideration—may legally find an indictment, 12 of their number concurring therein.

## Same—Member Irregularly on Panel but not Disqualified.

The general rule is that mere irregularity in the proceedings by which a grand juror gets upon the panel does not affect the legality of its proceedings if such grand juror is not personally disqualified.

## Same—Number of Jurors.

Where the number of grand jurors is less than 23, but not less than 16, the defendant cannot complain, because the smaller the number the more secure is the defendant against being indicted.

Sabina J. Cooley, George C. Cooley and Julius Leopold were indicted for the crime of unlawfully selling intoxicating liquor. Upon their arraignment before the district court for Jackson county, they moved to set aside the indictment because it "was not found, indorsed and presented as prescribed in the chapter relating to grand juries" in the details specified in the opinion. The motion was overruled, Quinn, J., and the case certified to this court. Affirmed.

*E. T. Smith*, County Attorney, for the State.

*George W. Wilson* and *W. B. Sketch*, for defendants.

BUCK, J.

Case certified by the district court of Jackson county to this court upon the request of all of the defendants after the court had overruled a motion on their part to set aside an indictment wherein they were charged with the crime of having unlawfully sold intoxicating liquor at the village of Heron Lake, in said county.

The facts, briefly stated, are that a grand jury was duly drawn and appeared on the first day of the term of the district court in said county held in October, 1897, when it appeared to the court that five of said persons so appearing were not citizens of the United States or of this state, and they were then excused by the court, and it ordered a special venire for five persons to supply the deficiency. Five persons were accordingly summoned, and they, with the other 18 persons already summoned, were sworn as the grand jury, and after they had been in session 48 hours it appeared that one of their number, viz. P. C. Nelson, was not a citizen of the United States or of this state, and he was then excused by the

court, and no juror summoned to supply the deficiency. Thereafter the charge in the indictment was considered by the remaining 22 jurymen, and the indictment found and returned by them as the grand jury.

One of the 22 grand jurymen who found the indictment was August Lindstrum, he being present with said grand jury when the charge contained in said indictment was under consideration, and he took part in finding the same. Lindstrum's name had been placed on the previous annual list of grand jurors in January, 1896, by the county commissioners of Jackson county, and thereafter he was duly drawn and served as a grand juror at the May, 1896, term of said court. There was no legal annual list of grand jurors made in January, 1897, and in July, 1897, his name was again placed upon the annual list of grand jurors for said year, and he was drawn as a grand juror for the October term of said court, at which time he acted as a grand juror as above stated. Jackson county then contained a population exceeding ten thousand people.

Upon the foregoing facts the defendants moved to set aside the indictment, which motion was denied, and case certified according to law. Defendants claim that when Nelson was excused it created a deficiency, and that the panel should have been filled to the full number of 23.

G. S. 1894, § 7170, defines what constitutes a grand jury, viz.:

"A grand jury is a body of men, not less than sixteen nor more than twenty-three in number, returned at stated periods from the citizens of the county, before a court of competent jurisdiction, chosen by lot, and sworn to inquire of public offenses committed or triable in the county."

This grand jury appears to have been formed in the respect to numbers, as prescribed by statute, viz, not less than 16 nor more than 23. Proffatt on Jury Trial (section 46) lays down the rule that, if the necessary minimum number are on the grand jury when an indictment is found, it will be good. Of course under G. S. 1894, § 7187, no more than 23 nor less than 16 persons can be sworn on a grand jury, and it cannot proceed to business with less than 16 members present. By section 7232 of said statutes it is provided that no indictment can be found without the concurrence of at

least 12 grand jurors, and when so found it shall be indorsed, "A true bill," and the indorsement be signed by the foreman of the grand jury, whether he is one of the 12 so concurring or not. There is no pretense but that this indictment was found with the concurrence of at least 12 grand jurors, and when there were present a number of grand jurors not less than the minimum nor more than the maximum fixed by law. "The parties cannot insist upon the attendance of the full panel directed to be summoned." Thompson & M. Jur. 75. In the case of Dolan v. People, 64 N. Y. 485, 493, it was said that the

"Precise number is fixed by the statute for no purpose of benefit or advantage to the persons who may be presented for indictment. The sole object of requiring this number is to secure the attendance at court of a sufficient number to constitute a grand jury."

Excusing Nelson still left six more grand jurymen than the minimum number required by law to be present when the charge was acted upon by them. This court held, in State v. Froiseth, 16 Minn. 277 (313), that, if not less than 16 persons appear and are impaneled, sworn, and charged by a court, a competent jury is organized. In State v. Causey, 43 La. An. 897, 9 South. 900, it was held that

"The drawing and placing of a disqualified person on a grand jury as a member thereof, and the subsequent removal of such person from it by the court, after impanelment, on objection, for proper disqualification, do not so vitiate or infect that body as to paralyze it, and blot it out of existence";

And we fail to understand how the defendant's rights could in any manner be jeopardized, or in any manner injured, by not summoning another grand juror in the place of Nelson. Their counsel say that Nelson's being excused created a deficiency, and that the panel should have been filled as provided by G. S. 1894, § 7185. If counsel mean to be understood as claiming that, the greater the number of grand jurors, the less likely were the defendants to be indicted by 12 members, their contention is unsound. The reverse is exactly the case. It seems reasonable to suppose that the smaller the number of members, the less likely to find 12 members who would be

liable to find an indictment. In Bishop's New Criminal Procedure (volume 1, § 855) he says:

"The smaller the number whereof the twelve are a part, the more secure is the defendant against being indicted. The provision is in his favor. On the other hand, if it authorizes more than twenty-three grand jurors, and a finding on a vote of twelve, it increases his danger, and, in principle, it is unconstitutional."

Bishop was writing of the constitutional and legislative restrictions in fixing the number of grand jurors. To make this proposition plainer, suppose the maximum number of grand jurors was 100 and the minimum number 16, and the concurrence of 12 members was required to find an indictment, would it not be self-evident that there was more danger of the defendants being indicted by the concurrence of 12 of the members than if there were only 16 members present and acting? It needs but little reflection and an analysis of this matter to see that the defendants are complaining of a proceeding which was really for their own benefit, instead of being an injury to them. Possibly, if the deficiency of five members in the first instance had not been filled, the defendants would not have been indicted. Whatever the number of the organized grand jury, 12 persons by the unwritten law, and largely by statute, are an adequate quorum for business. 1 Bishop, New Cr. Proc. § 854, subs. 2. Hence, where the grand jury is composed of not less than 16 members and not more than 23, its action is not vitiated by reason of there being drawn as one member thereof a disqualified juror, he being excused before the charge in the indictment is considered; and the remaining grand jurors, not less than 16, being present when the matter before them is under consideration, may legally find an indictment.

Many causes might arise, such as death, sickness, compulsory absence, or personal disqualification of one or more jurors, whereby the number would necessarily be reduced below the maximum number, but there still remain the minimum number of 16 or more, when it would be desirable and beneficial to the public interests to have the grand jury business proceed without delay or additional expense by attempting to fill the deficiency. While we are not unmindful of the duty which courts owe to those charged with public offenses

to see that all proper safeguards are placed around them in criminal proceedings, yet courts do not look with indulgence upon an objection of the kind here raised, where there is no fraud or design which could result to the defendants' injury.

Lord Hale once said that the great strictness in favor of life required in points of indictments

"Is grown to be a blemish and inconvenience in the law and the administration thereof; more offenders escape by the overeasy ear given to exceptions in indictments than by their own innocence, and many times gross murders" "escape by these unseemly niceties to the reproach of the law." 2 Pleas of the Crown, c. 25.

This brings us to the objection raised by defendants, that a person, viz. August Lindstrum, was permitted to be present during the session of the grand jury while the charge embraced in the indictment was under consideration, who took part in the finding of said indictment; he being a person other than a legally qualified grand juror.

The first thing to be noted in this respect is that no personal disqualification attached to him. We need not here recite what constitutes personal disqualification, because the question is not raised. In all respects he was a legal and qualified grand juror unless placing his name on the list in July, 1897, after his name had been on the previous annual list in 1896, made him otherwise. There is a distinction between a juror who is personally disqualified and one who possesses all the requisite qualifications, but is irregularly and improperly drawn. The general rule is that mere irregularity in the proceedings by which a juror gets upon the panel does not affect the validity of his action. Com. v. Brown, 147 Mass. 585, 18 N. E. 587. In the same case it is said that nearly all the cases where verdicts or indictments have been set aside rest upon an absolute disqualification of a juror. G. S. 1894, § 673, in part reads as follows:

"In all counties where the population shall exceed ten thousand people, no person shall be included in such list who was included in the last previous annual list, and any person having served as a juror for one term of court shall be retired from such list, and shall not be again drawn during the same year."

The law does not personally disqualify him from serving as a

72 M.—31

juror. The county commissioners are forbidden to include him in the list where he was included in the last previous annual list, and where he has served as a juror one term of court he is to be retired from the list, and not drawn again during the same year. There is not a word or sentence by which the proceedings make him personally unfit or disqualify him as a grand juror. During all this time that the officers are forbidden to include him in the list or draw him as a juror his personal qualifications as a juror stand unchallenged. When this limitation as to time is removed, he stands, as previously, a personally qualified grand juror. The fact that the prohibition against his further serving as a juror until after the expiration of the conditions to which we have referred seems to proceed upon the theory that he is properly a personally qualified juryman, but that as such he cannot be drawn until after the expiration of a certain period. The statute fixing the personal qualifications of a grand juror is in no way interfered with.

"A qualified and competent grand juror, if irregularly drawn, may with his fellows find an indictment to which the defendant cannot object; for he has no interest in the manner of the drawing." 1 Bishop, New Cr. Proc. § 875.

In the case of U. S. v. Ambrose, 3 Fed. 283, Swayne, C. J., at page 286, used this language:

"The point that gave me most trouble in my examination of the case, and caused me to hesitate for two or three days, was the fact that one of the grand jurors named in the venire was not put into the box by any competent authority, and not drawn from it. But his name was in the venire, and there is no imputation that it was put there in bad faith. There is no light thrown upon the subject as to how, or why, or wherefore, or under what circumstances it was put there. His name was regularly in the venire, and the marshal had no choice but to serve him, and it is not contended that he had not the qualifications required by law. He assisted in finding the indictment, and it is before the court. Now I think that this fact comes within the category of mere irregularities, which will not be permitted to vitiate the entire action of the grand jury, and I therefore say that, so far as that point is concerned, I feel warranted in overruling it."

In the case at bar Lindstrum was listed, drawn, sworn, impaneled, and charged by the court, having power generally to perform

the duties, and he assumed to act in good faith as a competent grand juror, without any charge of evil design being at any time made against him, not even in these proceedings. A mere irregularity in placing a qualified person on the grand jury, as by drawing the name of a person generally qualified, but who had been stricken from the jury list by a vote of the town, is not fatal to the legality of the panel. Com. v. Brown, 147 Mass. 585, 18 N. E. 587. We are of the opinion that the proceedings by which Lindstrum was placed upon the grand jury were irregular, but do not render his act in taking part in finding this indictment invalid. State v. Russell, 69 Minn. 502, 72 N. W. 832.

Order affirmed. The case is remanded for further proceedings therein.