204 So.2d 153 (1967)
Joyce PAULK, Appellant,
v.
The HOUSING AUTHORITY OF the CITY OF TUPELO, Mississippi, Appellee.
No. 44543.
Supreme Court of Mississippi.
October 30, 1967.
L.G. Fant, Jr., Holly Springs, John P. Fox, Houston, for appellant.
Lumpkin, Holland & Ray, Tupelo, for appellee.
PATTERSON, Justice:
This is an appeal from a judgment of the Circuit Court of Lee County awarding appellant, Joyce Paulk, $12,000 compensation for land taken in condemnation proceedings by appellee, Housing Authority of the City of Tupelo.
We are concerned here with two lots located in Tupelo, Mississippi, in an area commonly known as "Shakerag," a slum area which is now being transformed for commercial use. By resolution of August 5, 1958, the Housing Authority, pursuant to its power under Mississippi Code 1942 Annotated sections 7342-01 through 7342-20 (Supp. 1964), designated certain areas of the city, including "Shakerag," for an urban renewal project.
On June 20, 1961, the Housing Authority approved an urban renewal plan for acquiring and redeveloping these areas for light industrial and commercial uses. It filed condemnation proceedings against appellant's land in March 1963, and judgment was rendered in September 1963. However, *154 in June 1964 that judgment was declared void, and by the time the Housing Authority initiated new condemnation proceedings on April 20, 1965, appellant had removed all improvements on his land and it lay vacant. Paulk obtained a temporary writ of prohibition which stayed the condemnation proceeding, but on motion to make the writ permanent the circuit court dissolved the writ and dismissed the appellant's petition. Thereafter, the condemnation proceedings were resumed, and judgment was entered awarding appellant $45,000 compensation for his two lots. From this judgment both parties appealed to the Circuit Court of Lee County where, after a trial de novo, judgment was rendered for appellant in the sum of $12,000.
On appeal to this Court Paulk assigns that the lower court erroneously excluded from evidence the urban renewal plans for the area and erroneously granted Instruction No. 2 for the Housing Authority relating to the fair market value of the land.
We are of the opinion that the first assignment of error is well taken and will require a reversal of the case. The rule that the value of land taken by eminent domain proceedings is to be determined as of the date of filing the eminent domain proceedings is now well established within this state. See Pearl River Valley Water Supply District v. Wright, Miss., 203 So.2d 296, decided October 9, 1967, and Pearl River Valley Water Supply District v. Brown, 254 Miss. 685, 693, 694, 695, 182 So.2d 384, 386, 387 (1966). We stated in the latter case:
The agency exercising the extraordinary power of eminent domain cannot complain that the property has increased in value because of a proposed public project, until it actually files a petition to take the land by eminent domain proceedings.
* * * * * *
The value test does not begin from the creation of the reservoir but rather from the date of taking. Mississippi State Highway Comm'n v. Hemphill, [253 Miss. 507,] 176 So.2d 282 (1965); Pearl River Valley Water Supply District v. Wood, [252 Miss. 580,] 172 So.2d 196 (1965). Enhancement in value of the land prior to the taking may be shown and claimed by the landowner. Increased value of the land after the taking may be shown by the state agency to prove the value of the land at the date of the filing of the eminent domain proceedings, without regard to the injuries or benefits shared by the general public resulting from the use to which the land is to be put. Mississippi State Highway Comm'n v. Stout, 242 Miss. 208, 134 So.2d 467 (1961). Cf. Mississippi State Highway Comm'n v. Taylor, 237 Miss. 847, 116 So.2d 757 (1959). (Emphasis added.)
* * * * * *
Moreover, since the date of the filing of the eminent domain proceeding is the date when the fair market value of the property is to be determined, the landowner is not entitled to the increased value of the property after that date.
The appellant-landowner is entitled to the fair market value of his property on the date the condemnation proceedings were filed, including any enhancement in value resulting from the resolutions of the Housing Authority designating the renewal project area. As a result of the urban renewal plans approved by the Housing Authority on June 20, 1961, appellant's land was rezoned and restricted to light industrial and commercial uses. The value of these lots *155 is derived from the potential commercial development within the renewal project area and from their proximity to the midtown area of Tupelo.
These are the same plans which this Court, as well as the lower court, relied upon in determining whether the proposed use of these lots was a public use as would warrant the exercise of eminent domain power for their acquisition. This question was resolved in the affirmative in Paulk v. Housing Authority of City of Tupelo, 195 So.2d 488 (Miss. 1967). The basis for appellee's objection and argument is that the plans of the Housing Authority are subject to change, and though properly admitted in evidence in the former case on the issue of the public nature of the undertaking, they have no evidentiary relevancy on the issue of the fair market value of the land. The plans objected to are those depicting the Housing Authority's proposed use of the area, the location of streets, the alleyways, and other essentials to its development. They were the plans being used on the date of the filing of the condemnation proceedings. As such they are the best evidence of the highest and best use of the lots on that date. Subsequent modification of the Housing Authority's plans for the area could in no way alter this fact since any resultant change would have no retroactive effect. We conclude that appellee's contention in this regard is without merit.
Furthermore, the fair market value as between a willing purchaser and a willing seller in an open market is the standard used by this Court and others in arriving at the value of land taken by condemnation. We cannot conceive of a prospective purchaser of commercial property, in an area being transformed by urban renewal, not inquiring into the zoning restrictions on the property, the plans for streets and alleyways, the lot frontage on such streets, etc., so that he might determine its suitability for his purpose. Since it is our opinion that the urban renewal plans are an essential factor in determining value under the willing-purchaser rule, we must conclude that the landowner was prejudiced by the court's refusal to allow those plans in evidence, and this constitutes reversible error.
For the same reason, appellee's Instruction No. 2, which states in the abstract the willing-purchaser rule for establishing fair market value, was improperly granted, though legally correct. Upon retrial and admission into evidence of the urban renewal plans in existence at the time of the taking, however, the instruction would be proper.
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, BRADY and SMITH, JJ., concur.