No. 45,171

THE URBAN RENEWAL AGENCY OF THE WICHITA, KANSAS, METROPOLITAN AREA, *Appellant,* v. JACK SPINES, JR., IRENE THOMPSON SPINES, H. G. DICK and EVELYN SPINES DICK, *Appellees.*

(447 P. 2d 829)

Opinion filed December 7, 1968.

*Ronald H. Rogg,* of Wichita, argued the cause and was on the brief for the appellant.

*Tom C. Triplett,* of Wichita, argued the cause, and *George B. Collins, Robert Martin, K. W. Pringle, Jr., W. F. Schell, Robert M. Collins, William L. Oliver, Jr.* and *William V. Crank,* all of Wichita, and *Thomas M. Burns* and *Peter J. Wall,* both of Denver, Colorado, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: The matter herein arises out of an appeal from the award of court-appointed appraisers in a condemnation action filed by the Urban Renewal Agency of Wichita, Kansas.

The question before the court is whether evidence showing an increase in real estate values resulting from private improvement on property in the vicinity of the condemned property should be

excluded in arriving at the fair market value of the condemned property.

The facts have been stipulated by the parties.

The Urban Renewal Agency of the Wichita, Kansas, Metropolitan Area (appellant herein) prepared and designated what is referred to as Project R-19. The boundaries of the project encompassed a large area in downtown Wichita, Kansas. The two properties here in question were included within the project area and are identified as 3A (hereinafter referred to as the Garvey property) and 5J (hereinafter referred to as the Spines property). These properties face each other fronting on Douglas Avenue in Wichita, Kansas.

The Urban Renewal Agency had the authority to acquire by eminent domain both parcels of land here in question within the project area on the date of the taking of the Spines property. That authority to acquire the Garvey land has never been exercised by the Urban Renewal Agency. After the designation of the boundaries of Project R-19, but prior to the date of the taking of the Spines property by condemnation, the Garveys commenced construction of a multimillion dollar office building on their property by a private developer without formal approval or financial support of the Urban Renewal Agency. Thereafter, the Urban Renewal Agency condemned the Spines property to become part of the civic center public project.

The parties stipulated that if the market value of the Spines property on the date of the taking were to be determined by considering the Garvey property with the construction on it, the value of the Spines property would be $78,000. They further stipulated that if the market value of the Spines property were to be determined without taking into consideration the construction on the Garvey property on the date of the taking, the market value of the Spines property would be $70,000.

The sole question presented to the trial court was the fair market value of the Spines property on the date it was taken by the Urban Renewal Agency.

The Urban Renewal Agency, appellant herein, takes the position that in determining the fair market value of the Spines property, the court should not consider the Garvey property as improved even though it was admitted that the Urban Renewal Agency was not in any way responsible for the Garvey improvement and had never condemned the Garvey property.

The only support the Urban Renewal Agency has for its position is that the Garvey property was initially placed within the described boundaries of the urban renewal area defined as Project R-19.

In eminent domain proceedings the general principle is that the landowner has a constitutional right to be compensated for the property taken from him at its fair and reasonable market value for the best and most advantageous use to which the property may be put as of the date of the taking. (*United States v. Miller,* 317 U. S. 369, 87 L. Ed. 336, 63 S. Ct. 276 [1943]; and *Love v. Common School District,* 192 Kan. 780, 391 P. 2d 152.)

An exception to this rule is that the condemning authority is not obligated to pay for an enhancement in the fair market value of the property which occurs as a result of the public improvement made before the date of the taking. That is, the landowner is not entitled to the additional value resulting as a part of the comprehensive scheme of improvement, which requires the taking of his and other property. This rule has been stated in different language by the various authorities cited and quoted in *Harris v. Wyandotte County Comm'rs,* 151 Kan. 946, 101 P. 2d 898 (affirmed in *Steck v. City of Wichita,* 179 Kan. 305, 295 P. 2d 1068).

A well-recognized writer on eminent domain has stated the exception to the general rule as follows:

"If it is known from the very beginning exactly where the improvement will be located . . . the property that will be required for its site will not participate in the rise or fall in values, for, since such property is bound to be taken if the improvement is constructed, it can never by any possibility either suffer from or enjoy the effects of the maintenance of the public work in its neighborhood; and consequently it is well settled that in such case in valuing the land the effect of the proposed improvement upon the neighborhood must be ignored." (4 Nichols on Eminent Domain [3rd Ed.] § 12.3151 [1], pp. 205, 206.)

See, also, 1 Orgel on Valuation Under Eminent Domain (2nd Ed.) ch. vm, pp. 424-450.

In the *Harris* case, supra, the Wyandotte County Commissioners had platted a proposed recreational park and public lake. The plaintiff's land was included within this plat. Subsequently, other lands also within the plat were condemned, upon which a lake was constructed prior to the taking of the plaintiff's land. When the plaintiff's land was finally condemned, he contended his property was now lakeside property and could not be considered in its

former use. On appeal to this court it was held the plaintiff was not entitled to the enhancement in value as lakeside property, because the enhanced value was due solely to the particular public project for which the property was being condemned.

The situation in the instant case is entirely different. The enhancement in value in the present case was due to the construction of a building on the Garvey property adjacent to the Spines property, wherein the improvement upon the Garvey property was undertaken by a private developer without the aid of urban renewal. At no time was the Garvey property ever condemned or taken as a part of the urban renewal development. In *Harris* the enhancement in value was caused by the lake—a part of the public improvement for which the plaintiff's land was ultimately condemned. In *Harris* the property which caused the enhancement in value of the plaintiff's tract had been previously condemned, while here the Urban Renewal Agency has never condemned the Garvey property. Furthermore, the lake in the *Harris* case was constructed by the condemning authority, Wyandotte County. There the county was solely responsible for the improvement that had enhanced the value of the plaintiff's property. In the present case the Garvey property was privately owned and the building constructed thereon which increased the value of the Spines property is the sole product of private enterprise.

Reduced to its simplest form, the appellant contends land values are frozen within the project area designated by the Urban Renewal Agency once the project area is designated and defined. This we cannot accept. The effect of the appellant's position would permit an Urban Renewal Agency to freeze the value of property to be condemned, perhaps for years, by merely drawing the preliminary boundaries of a project to include all adjacent property which might be developed by private enterprise, without any actual intention or plan to devote it to public use.

In *Haley v. State,* 406 S. W. 2d 477 (Tex. Civ. App. 1966) it was held that the landowners were entitled to be paid the entire market value of their land on the date of taking, including the enhancement in value resulting from abandonment of a railroad right-of-way, where abandonment took place some three years before condemnation of land for highway purposes, and removal of the railroad right-of-way did not result from the proposed highway project.

The Supreme Court of Mississippi in *Paulk v. Housing Authority of City of Tupelo*, 204 So. 2d 153 (Miss. 1967) held the value of land taken by eminent domain is to be determined as of the date of filing eminent domain proceedings; and that a landowner was entitled to the fair market value of his property on the date condemnation proceedings were filed, including any enhancement in value resulting from resolutions of the municipal housing authority designating the renewal project area. There the two lots in question were within the area designated on the 5th day of August, 1958, by the housing authority pursuant to its power granted by the state of Mississippi, and on the 20th day of June, 1961, the housing authority approved an urban renewal plan for acquiring and redeveloping these areas for light industrial and commercial uses. Thereafter, in March, 1963, it filed condemnation proceedings against the appellant's two lots resulting in a judgment which was later declared void. By the time the housing authority initiated new condemnation proceedings on the 20th day of April, 1965, the appellant had removed all improvements on his land and it lay vacant. When the condemnation proceedings were resumed, judgment was eventually entered awarding the appellant $45,000 compensation for his two lots. From this judgment both parties appealed to the Circuit Court where, after a trial *de novo*, judgment was rendered for the landowner in the sum of $12,000. On appeal the landowner assigned as error that the lower court erroneously excluded from evidence the urban renewal plans for the area, and erroneously instructed on behalf of the housing authority concerning the fair market value of the land. The Supreme Court of Mississippi reversed, holding that the enhancement in value of the land prior to the date of the taking may be shown and claimed by the landowner, but that the increased value of the land after the taking may be shown by the state agency to prove the value of the land at the date of the filing of the eminent domain proceeding, without regard to the injuries or benefits shared by the general public resulting from the use to which the land is to be put.

Thereupon the court concluded by saying:

"Furthermore, the fair market value as between a willing purchaser and a willing seller in an open market is the standard used by this Court and others in arriving at the value of land taken by condemnation. We cannot conceive of a prospective purchaser of commercial property, in an area being transformed by urban renewal, not inquiring into the zoning restrictions on the property, the plans for streets and alleyways, the lot frontage on such streets,

etc., so that he might determine its suitability for his purpose. Since it is our opinion that the urban renewal plans are an essential factor in determining value under the willing-purchaser rule, we must conclude that the landowner was prejudiced by the court's refusal to allow those plans in evidence, and this constitutes reversible error." (p. 155.)

Whether this court would follow the Supreme Court of Mississippi on the facts confronting it in the *Paulk* case is a question we leave open. A decision on the facts presently confronting this court need not encompass a determination of the issue presented in *Paulk*.

In *Paulk* the long delay between the original action of the public housing authority in defining the project area and the ultimate condemnation of the landowner's property inferentially suggests the many problems confronting a landowner whose property happens to be located in an urban renewal project area. These problems include the maintenance, improvement, use, occupancy and sale of the property. In the instant case the parties have not favored us with the dates of activity concerning Urban Renewal Project R-19 in the city of Wichita. (But see, *Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964, decided in July, 1965, wherein it is disclosed the board of city commissioners of Wichita, Kansas, first took formal action regarding Uurban Renewal Project R-19 on the 6th day of March, 1962.)

Upon the stipulated facts here confronting the court, we hold the owners of the Spines property are entitled to recover the enhanced value of their property resulting from the improvement of the Garvey property by a private developer without formal approval or financial support of the Urban Renewal Agency.

The trial court determined it was proper to take into consideration the improvement of the Garvey property in arriving at the market value of the Spines property, and in accordance with the stipulation found the fair market value of the Spines property on the date of the taking to be $78,000, for which amount it entered judgment.

The judgment of the lower court is affirmed.