No. 45,822

In the Matter of Condemnation of Land for School Purposes RIDGLEA, INC., a Corporation, Plaintiff and Landowner, *Appellant*, v. UNIFIED SCHOOL DISTRICT No. 305, SALINE, COUNTY, STATE OF KANSAS, Defendant and Condemnor, *Appellee*.

(476 P. 2d 601)

Opinion filed November 7, 1970.

*Paul L. Aylward*, of Ellsworth, argued the cause, and *George D. Miner* and *Ron Svaty*, of Ellsworth, were with him on the brief for the appellants.

*James P. Mize*, of Clark, Mize, Graves, Linville & Miller, Chartered, Salina, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is an appeal by the landowner from a jury award in an eminent domain proceeding.

On October 29, 1968, Unified School District No. 305 instituted a condemnation proceeding to acquire a tract of land consisting of 19.81 acres owned by Ridglea, Inc. for school purposes. Both sides,

being dissatisfied with the appraiser's award of $42,800, appealed to the district court. The appeals were consolidated, and the case tried to a jury, resulting in a verdict for $36,600 (which did not include the stipulated sum of $965 for damages to growing crops).

Three points of error are raised for our consideration.

The appellant first complains that persons who were residents and taxpayers of the school district should not have been permitted to serve as jurors in the case. Sixteen of the eighteen prospective jurors fell within this category and were retained on the panel despite appellant's challenge for cause.

Appellant takes the position that residents and taxpayers of the school district were absolutely disqualified to sit as jurors in the case. In support of its argument, appellant points to several of our early decisions holding that taxpayers of a municipality were incompetent to serve as jurors in an action against the city; e. g., *City of Abilene v. Hendricks*, 36 Kan. 196, 13 Pac. 121; *Manufacturing Co. v. Bridge Co.*, 81 Kan. 616, 106 Pac. 1034, and urges the same rule should apply, by analogy, in actions against a school district.

The harsh rule of those early cases was relaxed with the enactment in 1913 of a statute providing that in actions against cities or other municipal groups a taxpayer therein would not be disqualified as a juror by reason thereof (L. 1913, ch. 236, § 1). The statute became incorporated into our former code of civil procedure as a part of G. S. 1949, 60-2906, which dealt with specific grounds of challenges for cause. The impact of the statute is demonstrated by what was said in *Water Co. v. City of Wichita*, 98 Kan. 256, 158 Pac. 49:

". . . The plaintiff objected to three of the jurors on the ground that they were residents and taxpayers of Wichita. This is no longer an absolute disqualification, (Laws 1913, ch. 236) although such juror may be examined on his *voir dire* to determine his impartiality. Nothing was shown here, however, that the challenged jurors would hesitate to do their duty notwithstanding their slight and inconsequential interest as taxpayers in the outcome of the lawsuit." (P. 261.)

When our new code of civil procedure came into being, the specificity of 60-2906 was replaced with the general terms of K. S. A. 60-247 (*b*):

"All challenges for cause or favor, whether to the array or panel or to individual jurors, shall be determined by the court."

Appellant's contention that with the repeal of 60-2906 the legislature intended we revert to the rule of absolute disqualification is completely unfounded. Such an interpretation would do violence to the spirit and purpose of the new code. We believe the language of K. S. A. 60-247 (*b*) clearly contemplates that all challenges with respect to a juror's qualifications are to be determined by the trial judge in the exercise of his sound judicial discretion.

As a practical matter, there is good reason for holding that taxpayers of a taxing unit involved in a lawsuit are not automatically disqualified from serving as jurors. We are told that approximately eighty-five percent of the inhabitants of Saline county reside within the boundaries of Unified School District No. 305. Undoubtedly, there are other areas of Kansas where a school district encompasses all or the major portion of a county. To hold that taxpayers of a school district are absolutely disqualified as jurors in an action against the district would lead to a strange and illogical result, necessitating a change of venue in many instances. (See, *Manufacturing Co. v. Bridge Co.*, supra; *School Dist. No. 1 v. Globe & Republic Ins. Co.*, 142 Mont. 220, 383 P. 2d 482. Also, see, K. S. A. 19-107, relating to competency of inhabitants of a county to serve as jurors in actions in which the county is interested.) The interest a taxpayer shares in common with the whole community can generally be regarded as too remote and minute to overbalance his innate sense of justice and fairness to all parties concerned (*Commonwealth v. Brown*, 147 Mass. 585, 18 N. E. 587; 47 Am. Jur. 2d, Jury, § 292; Anno. 81 A. L. R. 2d, 708, § 7).

Whether a prospective juror's interest as a taxpayer will impair his ability to act fairly and impartially is, of course, a proper matter to be explored in *voir dire* examination. The record before us discloses the jurors were fully examined on the subject and indicated their impartiality would not be affected. We find no abuse of discretion on the part of the trial court in denying the challenge, and its ruling will not be disturbed.

The appellant further contends that the district court erred in admitting evidence of a prior sale of an adjacent tract of land to the school district (hereafter referred to as the Littell sale).

The Littell sale involved a tract of land consisting of 59.67 acres lying immediately to the east and south of the condemned property. In the spring of 1968 the school district was looking for a new high school site and obtained an option on the Littell property.

The option was exercised on August 21, 1968, as evidenced by a warranty deed of that date, from the Littells to the school district. The recited consideration for the sale was $76,079.25. The deed was acknowledged on October 24 and filed of record on October 28, one day before the present condemnation proceeding was commenced. Although the record is silent on the matter, we are told by counsel that after the option to the Littell property was obtained, the school district found it necessary to acquire additional land for the high school site; hence, the Ridglea tract was condemned.

The date of taking of the Ridglea tract was agreed upon, at a pretrial conference, as having been October 29, 1968. Under the terms of the pretrial order, each of the parties was limited to three expert witnesses, who in turn were limited to three comparable sales "to be used by them in their direct testimony to support their opinions as to valuation." Prior to trial, and pursuant to the court's order, each party furnished to the other the names of its witnesses as well as the list of the comparable sales on which it intended to rely. One of the two comparable sales listed by the school district was that of the Littell property.

When the case came on for trial, the three valuation witnesses for appellant were questioned on direct examination about the Littell sale. Hartzell Wooley and Kenneth Newell said they gave little or no consideration to it as a comparable sale because it was made under "threat of condemnation." During the cross-examination of Mr. Wooley, specific inquiry was made about the details of the sale. Over appellant's objection, the witness was permitted to testify about the date of the sale and the consideration therefor. This was proper cross-examination inasmuch as inquiry had already been made about the Littell sale in the direct examination of the witness. In *Humphries v. State Highway Commission,* 201 Kan. 544, 442 P. 2d 475, we said:

". . . [I]t is proper cross-examination to inquire into matters which were the subject of the witness' direct testimony or material or relevant thereto." (Syl. 1)

Even before our new code of civil procedure, cross-examination as to the purchase price of specific tracts of neighboring land was permissible for the purpose of testing the knowledge and competency of an expert witness (*Luecke v. State Highway Commission,* 186 Kan. 584, 352 P. 2d 454).

Appellant's third witness, Harley Rose, testified on direct examination that he considered the Littell sale, but in his opinion there was a "lot of difference in the lay of the land." On cross-examination, however, the witness admitted forty acres of the Littell tract were comparable to the land condemned, and he further testified, *without objection*, to the price paid for the Littell property.

Each of the three expert witnesses appearing for the school district candidly acknowledged during cross-examination that he relied on the Littell sale in arriving at an opinion of the fair market value of the Ridglea tract. All of them were experienced realtors and appraisers, well acquainted with the market conditions in the Salina area. Mr. Bolen, on behalf of the school district, had actually negotiated the option for the purchase of the Littell property. Both he and Mr. Adrian testified that in formulating their opinions of fair market value, they took into consideration their general knowledge of real estate transactions and economic conditions in the vicinity. Mr. Adrian further expressed his opinion that the Littell sale was in fact voluntary. The school district's evidence also tended to show there was an oversupply of and a limited demand for building lots in Salina at the time the Ridglea land was condemned. At the conclusion of all the evidence, counsel for appellant moved to strike the testimony of the school district's witnesses on the ground they had relied on the Littell sale without showing it was voluntary and free from compulsion. In overruling the motion, the trial court expressed the view that the appellant could not complain because the Littell sale was first raised in the direct examination of its expert witnesses.

Within the context of the factual situation here, we cannot say the trial court committed reversible error in denying appellant's motion to strike. The motion, if sustained, would have resulted in all of the school district's evidence being stricken solely because the Littell sale was used as a basis for the witnesses' opinion. This, of course, would have included other relevant evidence to which we have already alluded. The fact the witnesses had relied on the sale was for the most part developed in cross-examination by appellant's counsel. At that time, inquiry was also made by counsel about the propriety of their considering the sale as being voluntary. Other than the time element of the sale,

and the fact it was made to the school district, there was nothing to indicate the sale was other than an arm's length transaction. The sale was accomplished *before* condemnation proceedings had begun, which makes this case clearly distinguishable from *Searcy v. State Highway Commission,* 145 Kan. 709, 67 P. 2d 534 (where a sale to the condemnor was made *after* condemnation proceedings had been commenced).

A fair assessment of the testimony of Mr. Rose, appellant's own witness, leads us to believe that he considered the Littell sale in valuing the condemned property, but made considerable allowance for the portion of the land which in his opinion was not comparable. Nothing was said, however, about the sale not being voluntary. Actually, the only difference between Rose's testimony and that of the witnesses for the school district was in the weight given the sale in arriving at their respective valuations. Factors bearing upon the comparability of other sales ordinarily go more to the weight to be given the testimony than to its admissibility. (See, *City of Wichita v. Jennings,* 199 Kan. 621, 433 P. 2d 351.) The jury was instructed, without objection, that evidence of sales of other property was admitted for the purpose of testing the credibility and knowledge of the witnesses and for the purpose of determining the comparability of sales which the witnesses may have considered in arriving at their opinions, but that market value was not determined by "exceptional or noncomparable sales."

The voluntariness of the Littell sale was never an issue until raised by appellant during the course of the trial. No objection was registered to the use of the sale by the school district's witnesses until appellant's motion to strike at the conclusion of their testimony. Appellant had been informed well before trial that the school district intended to rely on the Littel sale as a comparable sale. Notwithstanding this knowledge, appellant made no effort to inform the court or opposing counsel that voluntariness of the sale would be a contested issue. Obviously, as a bit of trial strategy, appellant, by inquiring about the Littell sale during the direct examination of its witnesses, sought to bolster its own opinion evidence and at the same time to discredit in advance that which would be introduced by the school district. By this means, appellant used the Littell sale for its own purposes and to its own advantage. We believe, by the same token, appellant

was in no position to wait and challenge all the school district's evidence because of the latter's use of the Littell sale. Under all the circumstances, the motion to strike not only suffered from overbreadth, but also came too late. (See, *Board of Park Commissioners v. Fitch*, 184 Kan. 508, 337 P. 2d 1034.)

Finally, appellant complains that the trial court refused to permit inquiry as to whether or not acquisition of the Littell tract for school purposes would enhance the value of the condemned property. The point is fully answered by what was said in *Urban Renewal Agency v. Spines*, 202 Kan. 262, 447 P. 2d 829. A landowner is not entitled to an enhancement in the fair market value of the property taken resulting from a comprehensive plan of public improvement which requires the taking of his and other property.

The judgment is affirmed.